**ADAM HAT STORES, Inc., v. LEFCO et al.**

No. 586.

District Court, E. D. Pennsylvania.

March 6, 1942.

Sylvan H. Hirsch, of Philadelphia, for plaintiff.

Earl Jay Gratz, of Philadelphia, for defendants.

GANEY, District Judge.

This is a bill in equity brought by the plaintiff to enjoin and restrain the defendants from conducting their business under the style name, "Adams Clothes", in the cities of Philadelphia, Norristown, Chester, Wilmington and Trenton, or from using any other name deceptively similar to that of the plaintiff, or more particularly under any name containing the word "Adam" or "Adams". After carefully reviewing a great deal of testimony and a large number of exhibits, the court makes the following:

### Findings of Fact.

(1) The plaintiff is a corporation organized under the laws of the State of New York and is engaged largely in the sale at wholesale and retail of men's hats, and in a small way some wearing apparel such as neckwear and gloves throughout the United States.

(2) The defendants are citizens and residents of the State of Pennsylvania, engaged in the sale of men's clothing and wearing apparel in the cities of Philadelphia, Chester, Norristown, Wilmington, Delaware and Trenton, New Jersey, in all of which men's hats are sold excepting in the City of Trenton.

(3) Since 1924 the plaintiff has been continually engaged in the sale at retail and wholesale of hats and caps under the name Adam throughout the country, the annual sales of which at the time of the institution of this action ran around seven million dollars.

(4) The plaintiff now has ninety-five (95) company owned stores, one hundred twenty-nine (129) agencies (those who handle only Adam products, but are individually owned) and two thousand dealers (those who sell Adam products along with any other products).

(5) In this general area the plaintiff conducts two company owned stores in Philadelphia, the first of which was opened in September, 1930, at Thirteenth and Juniper Streets, seven sales agencies in Philadelphia, and one company owned store in Trenton, which was opened in 1931; a sales agency in Norristown, Pennsylvania, which was opened on September 19, 1933; a sales agency in Chester, Pennsylvania, opened on February 2, 1935 and one sales agency in Wilmington, Delaware, opened on March 5, 1934.

(6) In the year 1933 the plaintiff moved his store to Thirteenth and Market Streets in the City of Philadelphia.

(7) The plaintiff has spent large sums of money in radio broadcasting since the opening of its store in Philadelphia in 1930, and among others, sponsored sport programs and championship fights.

(8) In Philadelphia alone the plaintiff's sales have increased from forty-four thousand dollars ($44,000) in 1931 to two hundred ninety thousand dollars ($290,000) in 1939.

(9) The plaintiff has an established selling price for its hats of two dollars and 95/100 ($2.95).

(10) In September, 1920, one of the defendants, Arthur Lefco, opened a store under the name of Charles Adams Co. and sold men's custom tailored clothes under the brand name "Adams Clothes".

(11) In September, 1920, defendant opened a store at Trenton, New Jersey, selling clothes under the brand name "Adams Clothes".

(12) In the spring of 1923 both the Trenton and Philadelphia stores were closed, Mr. Lefco retiring from business by reason of illness.

(13) From the spring of 1923 to the fall of 1933 the defendant, Arthur Lefco, never conducted a business under the style name "Adams Clothes" or Charles Adams

444

Co., nor under any style name with the word Adams in it.

(14) That the defendant from the fall of 1923 until the spring of 1924 conducted a business under the name of "Clarks" at 1514 Market Street, and from the spring of 1924 until the fall of 1924 at 11 North 13th Street, under the name of "Arthur & Kennedy" and "Arthur, The Tailor", and from the fall of 1924 to September, 1933, at 902–910 Arch Street under the name of "Herman Tailoring Co." and "Herman & Company", in all of which he sold clothes under the brand name "Adams Clothes".

(15) On September 9, 1933, the defendant, Arthur Lefco, opened a store at 10 North 11th Street, devoted exclusively to "Adams Clothes" under the style name of "Adams Clothes" and continues so to do.

(16) The style name "Adams Clothes" was registered with the Court of Common Pleas of Philadelphia County on July 31, 1933, and with the Secretary of the Commonwealth on August 4, 1933.

(17) The defendants opened the following additional stores under the style name of "Adams Clothes" at the following dates:

Norristown, Pa. on September 9, 1935;

Chester, Pa. on March 4, 1936;

Wilmington, Delaware on March 14, 1937;

Trenton, New Jersey on September 9, 1939.

(18) Defendants moved their store from 10 North 11th Street to 1013 Market Street on September 13, 1940.

(19) On November 15, 1933, the plaintiff wrote a letter to the defendants, protesting to the defendants' use of the style or business name, "Adams Clothes".

(20) On February 27, 1934, the plaintiff filed a Bill in Equity in the Court of Common Pleas of Philadelphia County, praying that the defendants be restrained preliminarily, and on final hearing from using the style or business name, "Adams Clothes".

(21) On March 20, 1934, a hearing was held on the plaintiff's application for a preliminary injunction at the end of which, the plaintiff withdrew the application for a preliminary injunction and on the following day, March 21, 1934, an attempt was made to discontinue the proceedings, and on application by the defendants the Supreme Court of Pennsylvania remitted the record to the Court of Common Pleas refusing to allow the discontinuance, and the matter has remained in this status down to the present time.

Conclusions of Law.

■ (1) The court has jurisdiction of the parties and the cause of action.

■ (2) The use by the defendants of the style or business name of Charles Adams Co. in the City of Philadelphia from 1918 to 1923, selling exclusively a product known as "Adams Clothes" and the continuance of the sale of men's clothes under the brand, "Adams Clothes" from 1923 to 1933—although trading under a number of different style or business names, none of which included the word "Adams"—did not make the use by the defendants of a style or business name "Adams Clothes" in 1933, an infringement of the plaintiff's trademark or constitute unfair competition to the plaintiff, who opened an Adam Hat Store in Philadelphia in September 1930.

(3) The plaintiff is guilty of laches.

The testimony shows that the defendant, Arthur Lefco, had an established business at 114 South 11th Street, a mid-city location, in the City of Philadelphia, and that he sold and advertised men's clothing under the name "Adams Clothes", and had gained —either through the sale of "Adams Clothes" or by reason of the style or business name of Charles Adams Company— the name of Mr. Adams by a goodly number of his customers. He was taken ill in the spring of 1923 and believing that his illness would continue for sometime, he sold the store at 114 South 11th Street. However, recovering faster than he anticipated, he was well enough to return to business in the fall of the same year, and he bought an established business known as "Clarks" and has continued in the men's clothing business in the City of Philadelphia at various stores, which later will be adverted to, down to the present time. While the plaintiff has attempted to cast disparagement on the statement of Arthur Lefco that he has been selling "Adams Clothes" ever since he returned to business in the fall of 1924, though under different firm names, "Clarks", "Arthur & Kennedy", "Arthur, The Tailor", "Herman Tailoring Co." and "Herman & Company", down to September 9, 1933, when he opened a store devoted exclusively to "Adams Clothes" under the

style or business name of "Adams Clothes", it is found that such was the case, since not alone did the defendant himself say that he sold "Adams Clothes" during this ten-year period, but he is corroborated by nine witnesses, who had contacts either as employees, salesmen, neighbors or men engaged in other capacities, having occasion to visit the stores during all these years. Among those offering proof that "Adams Clothes" were being sold, not the least impressive was a window dresser, who testified that he dressed a portion of the window with "Adams Clothes" and accordingly in order to adopt the view of the plaintiff that "Adams Clothes" were not sold by the defendants during this period and that there was a complete abandonment of any product with the name "Adams" in it, would necessitate disbelieving witnesses, who have positively so testified, and whose credibility was not impeached on cross examination. Furthermore, the testimony shows that various witnesses who were in the store during this period observed displays of "Adams Clothes" and advertising matters pertaining thereto prominently displayed throughout the store and windows.

In September 1920, the defendants opened a store in Trenton, New Jersey, where "Adams Clothes" were exclusively sold, but which likewise was disposed of when Mr. Lefco, one of the defendants, became ill in 1923. While there was no extensive advertising program of "Adams Clothes" by the defendant during the years 1923 to 1933 as is evidenced by the failure of the defendants to produce newspaper advertisings with respect to "Adams Clothes", it was testified to that handbills, advertising the product, were mailed out to a large list of customers, who had previously bought from Charles Adams Company, and this coupled with the displays of Adams product by the various stores which the defendants operated during these years, gave sufficient publicity to identify "Adams Clothes" in the clothing business in this area.

This sale of the product "Adams Clothes" by the defendants not alone in Philadelphia and Trenton from 1918 to 1923, but also the direct mail order advertising, which it was testified to, was used in connection with the sale of "Adams Clothes", firmly established, in my opinion, the use of the name in this general area. While it must be conceded from the testimony in the record that no extremely great volume of business was conducted by the defendants with respect to "Adams Clothes" covering the years 1923 to 1933, nor that extensive advertising campaigns were employed in connection with the marketing of the product, this is not a requisite, since it has been held from an early date that in order for equity to protect a trademark, while there must be some user in connection therewith, the quantum thereof need not be large. Nims, The Law of Unfair Competition and Trademark, 415; Kathreiner's Malzkaffee Fab. v. Pastor Kneipp Medicine Co., 7 Cir., 82 F. 321; Ansehl v. Williams, 8 Cir., 267 F. 9; Sweet Sixteen Co. v. Sweet "16" Shop, 8 Cir., 15 F.2d 920. In other words the courts have adopted the rule that if the product with the adopted brand upon it is actually being vended in the market with an intent by the proprietor to continue its production and sale, a sufficient property right has been made out, which will invoke the protection of a court of equity. It is not essential therefore that its use has been long continued or that the article be widely known, or that a large trade therein has been established, or that it have attained a wide reputation.

The general rule is that, as between conflicting claimants to the right to use the same mark, priority of appropriation determines the lawful user. Delaware & Hudson Canal Co. v. Clark, 13 Wall. 311, 20 L.Ed. 581; McLean v. Fleming, 96 U.S. 245, 251, 24 L.Ed. 828; Amoskeag Mfg. Co. v. D. Trainer & Sons, 101 U.S. 51, 53, 25 L.Ed. 993. It seems to me from a careful review of the testimony that there had been a definite appropriation of the mark "Adams Clothes" by the defendants prior to the time of the use of the name by the plaintiff in this general area. This is arrived at as has been indicated by the fact that there was no abandonment of the use of the name "Adams Clothes" by the defendants since it was kept alive in the various stores operated by them under such firm names as "Clarks", "Arthur & Kennedy" and "Herman & Company" by advertisements sent through the mail and display signs in the windows of the various stores operated by them as well as by the attachment of the mark to the label of the clothes. This therefore brings up what seems to me is the real nub of the issue which is whether or not having adopted the mark "Adams Clothes", and having used it for a period of ten years in connection with a certain

brand of clothes, the defendant can adopt the same as a firm name in 1933, when during this time the plaintiff has come into the area, particularly Philadelphia, and established and operated an Adam Hat Store as a branch of the Adam Hat Stores, Inc., which was operating in various states in the country. In other words, is the use to which the mark "Adams Clothes" is now applied, to wit: its use as a firm name, so different than that which it had previously been using, a marking for men's clothing, that equity will not protect it? In answer thereto, I feel that the plaintiff cannot invoke the protection of a court of equity and enjoin the defendant from using the term "Adams Clothes" in the transaction of his business, in that the new use given to the mark is not so dissimilar to the old use as would warrant the restraining arm of equity. I arrive at this conclusion because the mark or term "Adams Clothes" used by the defendants as a firm name is applied to men's clothing generally, since less than 1.55% of the defendants' business in 1940 was with respect to hats, which is the major business of the complainant company, and for the further reason that the product is being marketed in the same general area as "Adams Clothes" were previously sold, with the exception of Wilmington, which is somewhat outside of the metropolitan area of Philadelphia, which I take to embrace Norristown and Chester. The defendants' principal business is in Philadelphia as it was theretofore and as I have indicated the firm makes sale of the same class of merchandise as was sold previously, to wit: men's clothing, and it seems to me having sold this product for some fifteen years, it was but a natural step in the evolution of the business, considering the rapidity with which the business has expanded, that from the sale of a successful product such as a brand of clothes, it would be but natural that there would eventuate therefrom the adoption of the brand as a firm name.

Counsel on both sides as well as the court after extensive research have found but little authority by way of precedent to substantiate their respective contentions, but I am in accord with the view taken by Justice Holmes in Burt v. Tucker, 178 Mass. 493, 59 N.E. 1111, 52 L.R.A. 112, 86 Am.St.Rep. 499, wherein he states that he could see no objection to the defendant using the trademark which he had used on shoes he had sold in Massachusetts, as a tradename five years later in Philadelphia, even though one year after the discontinuance of the mark the plaintiff adopted it as his tradename.

I further feel that in the prosecution of this matter the plaintiff is guilty of laches. The record shows that on February 27, 1934, after the defendant had adopted the name "Adams Clothes" as a firm name (which was in September, 1933) the plaintiff attempted to enjoin the defendants' use of the name by a bill in equity in the Court of Common Pleas of Philadelphia County; a hearing was held on the plaintiff's application for a preliminary injunction on March 20, 1934, at the end of which hearing the plaintiff withdrew his application for a preliminary injunction and the case was continued until final hearing and on the following day, March 21, 1934, the plaintiff attempted to discontinue the proceeding without leave of court, at which time the defendant was called as of cross examination and the plaintiff was thereby advised that the defendant asserted his right to continue the use of the name. At the end of the hearing the plaintiff withdrew his application for a preliminary injunction and attempted to discontinue the same without leave of court. The defendants upon hearing of this, opposed it and the Supreme Court of Pennsylvania denied the plaintiff the right to discontinue and the record was remitted to the lower court. It is perhaps noteworthy that all of the defendants' stores in Norristown, Chester, Wilmington and Trenton were opened after this decision of the Supreme Court. It seems to me as contended by counsel after awaiting some seven months after the plaintiff had abandoned their application for a preliminary injunction and being refused permission to discontinue the action, it was logical to assume plaintiff had decided to abandon further prosecution thereof.

While it is true as in Menendez v. Holt, 128 U.S. 514, 9 S.Ct. 143, 32 L.Ed. 526, and in Layton Pure Food Co. v. Church & Dwight Co., 8 Cir., 182 F. 35, 32 L.R.A., N.S., 274, and in a long line of cases since that long delay in and of itself in the prosecution of the action is no defense to injunctive relief, nevertheless I feel that by reason of a different factual basis in the instant case, it can be distinguished from cases such as above cited. Here the plaintiff gave notice to the defendant in November, 1933, just a few months after

the defendant began using the name "Adams Clothes" as a tradename, that the plaintiff objected to the use thereof since it stated that use by the defendant of the tradename "Adams Clothes" was an infringement upon its tradename because of its alleged deceptive similarity. The defendant refused so to do and thereupon the plaintiff caused to be instituted in February, 1934 the bill in equity looking to the enjoinment of the name "Adams Clothes" by the defendant. This indicates a definite intention on the part of the plaintiff to try and prohibit the defendant from conducting a business in Philadelphia under the firm name "Adams Clothes". However, as has been indicated at the hearing on the application for the preliminary injunction the plaintiff withdrew the application and asked leave of court to discontinue the action. This affirmative conduct on the part of the plaintiff, the withdrawal of the application for the preliminary injunction and the asking leave of the court to discontinue the action, though opposed by the defendant and later denied by the Supreme Court of Pennsylvania, shows a very definite intention on the part of the plaintiff to abandon prosecution of the action. Accordingly, by resort to prosecution of this action in a new forum almost five years later with no attempt to pursue the action in the Court of Common Pleas of Philadelphia County, Sitting in Equity, to completion, is in effect a waiver of that notice contained in the letter of November 15, 1933, for during that time the defendants advertised by radio in forty broadcasts over Station WIP in Philadelphia during the years 1933, 1934, and 1935 at a total cost of $9,420.94; and in 2,128 broadcasts over WIP from Philadelphia during the years 1936, 1937, 1938, 1939 and 1940 at a total cost of $60,840.78; over Station WCAU, 160 broadcasts in 1940 at a cost of $10,800; over Station WFIL, 720 broadcasts from June, 1935, to September, 1937, at a total cost of $27,133.33. In addition thousands of lines of advertising were resorted to by the defendants since the court action above referred to, which involved the expenditure of large sums of money by the defendants therefor.

It is submitted that the elementary and fundamental principle of equity that he who seeks equity must do equity should be applied here. The failure of the plaintiff to proceed with the action instituted in the Court of Common Pleas of Phila-

delphia County, Sitting in Equity, after once having started the same, having in mind that he abandoned his application for a preliminary injunction as well as affirmatively asked the court's leave to discontinue the same, shows an attitude of mind which gave the defendant every right to assume that whatever objection he had to defendants user of the name was abandoned. To say now, almost five years after, during which time large sums of money, as has been indicated, were expended in the expansion of the defendants' business, that the defendants' user of the name "Adams Clothes" should be enjoined, would be, in view of what I construe to be silent permission, most unconscionable.

I, therefore, deny the prayer of the bill.