## MᶜLEAN *v.* FLEMING.

1. Where a manufacturer has habitually stamped his goods with a particular mark or brand, a court of equity will restrain another party from adopting it for the same kind of goods.

2. Positive proof of fraudulent intent on the part of the infringer is not required where the infringement is clearly shown.

3. Although no precise rule, applicable to all cases, can be laid down as to the degree of resemblance necessary to constitute an infringement of a trade-mark, an injunction will be granted where the imitation is so close, that, by the form, marks, contents, wor.. or their special arrangement, or by the general appearance of the infringing device, purchasers exercising ordinary caution are likely to be misled into buying the article bearing it for the genuine one.

4. It is not necessary, to entitle a party to an injunction, that a specific trade-mark has been infringed. It is sufficient to satisfy the court that the respondent intended to represent to the public that his goods were those of the complainant.

5. In this case, the court holds that the appellant has infringed the trade-mark of the appellee, but that the latter, by his long-continued acquiescence therein, and his unreasonable delay in seeking relief, has been guilty of inexcusable laches, and is not entitled to an account for profits. The decree below is therefore affirmed, so far as it awards an injunction, but reversed as to damages; and costs in this court are allowed to the appellant.

APPEAL from the Circuit Court of the United States for the Eastern District of Missouri.

The bill in this case was filed June 1, 1872, by Cochrane Fleming, to restrain the alleged infringement of his trade-mark for liver pills, by James H. McLean.

As early as 1834, Dr. Charles McLane, of Morgantown, Va., made and sold liver pills, putting them up in wooden boxes,

labelled "Dr. McLane's Liver Pills." In June, 1844, Jonathan Kidd, having purchased the exclusive right from him, began, at Pittsburg, Penn., to make and sell them. In 1845, Kidd formed a partnership with John Fleming, under the name of Jonathan Kidd & Co. Kidd died in 1853, and Fleming, the surviving partner, and one Cochrane Fleming, having purchased from Kidd's executors all his interest in the business, entered into partnership, under the name of Fleming Brothers. That firm continued until 1865, when Cochrane retired. John carried on the business in the firm name until his death, in November, 1870, whereupon Cochrane succeeded under his will to all his rights in the business.

Up to August, 1847, the pills in question were wrapped in an ordinary printed label. In that year, Kidd & Co commenced putting them up in wooden boxes, on the cover of each of which were stamped in red wax the words "McLane's Liver Pill," and on the wrapper, in a narrow border of scalloped pattern surrounding a panel, with a background of wave-line engraving, was printed in red ink a label bearing the words "Dr. C. McLane's Celebrated Liver Pills." In 1855, Fleming Bros. changed the color of the label to black, and made certain other changes, as follows: the groundwork of the engraved wrapper on the top of the box being composed of fine lines, crossing the box diagonally, and at right angles with each other, and bearing the words, in white, "Dr. C. McLane's Celebrated Liver Pills," "Celebrated Liver Pills" being upon a scroll similar to a double ogee in form with a black background. On the wrapper were also in white letters the words, "Prepared only by Fleming Bros., successors to Jon. Kidd & Co.," and a fac-simile of their signature and that of C. McLane, in black. This label, which is referred to in the opinion of the court as "Exhibit F," was used until October 1871, when another change was made, and the label mentioned in the decree below, and in the opinion of the court as "Exhibit H," was adopted. In it the groundwork has shaded curved lines cutting and crossing each other in such a way as to produce the effect of alternate light and shade, crossing the top of the box diagonally in place of the straight lines in "Exhibit F." In this label, the words "successors to Jon. Kidd & Co." are omitted.

In 1849, James H. McLean commenced, at St. Louis, Mo., to manufacture his proprietary medicines, and, in 1851, to manufacture and sell liver pills, under the name of "Dr. McLean's Universal Pills; " using first a type-printed label in red letters, which he, in 1852, changed to a lithographed red label, called in the decree "Exhibit L."

This label is printed in ink of a light red color, with the words, "Dr. McLean's Universal Pills," in white letters shaded by red lines running parallel with the length of the label. He used this label until 1866, having in 1863 inserted therein the initials (J. H.) of his name. In 1866, he changed his label to that referred to in the decree as "Exhibit K." In this label, the lines of the background, which is black, cross the top of the box diagonally and at right angles to each other, with the words "Dr. J. H. McLean's Universal Pills or Vegetable Liver Pills" thereon, in white letters. The use of this label he continued until May, 1872, when he adopted a new one, in the use of which no infringement of the complainant's label was found. He also used a stamp in red wax on his goods.

The court below decreed that the respondent, his agents, employés, and servants, be perpetually enjoined and restrained from using, or causing to be used, the words, "D'r J. H. McLean's Universal Pills or Vegetable Liver Pills," or "D'r McLean's Universal Pills," or "D'r J. H. McLean's Universal Pills," upon any label or wrapper for boxes or other packages of pills, resembling or in imitation of the labels or wrappers or trade-mark of the complainant, described as Exhibit H, whether in style of engraving, printing, or lettering; and from vending or exposing for sale, or causing to be vended or exposed for sale, any article of pills having upon the boxes or other packages thereof any such labels or wrappers so made in imitation of or resemblance to the said labels or wrappers of the complainant; but did not enjoin or restrain him from using them on any other labels or wrappers for pills than those described. It also referred the cause to a master, to take and state an account of the damages resulting to the complainant since Nov. 9, 1870, from the violation of his rights.

The master reported the complainant's damages at $7,399.35. The respondent excepted. His exception having been over-

ruled, the report confirmed, and a final decree entered, he appealed to this court.

*Mr. Samuel S. Boyd* for the appellant.

*Mr. M. L. Gray, contra.*

Mr. Justice Clifford delivered the opinion of the court.

Protection for lawful trade-marks may be obtained by individuals, firms, or corporations entitled to the same, if they comply with the requirements prescribed by the act of Congress; and the provision is, that a trade-mark, duly registered as required, shall remain in force thirty years from the date of such registration, subject to an exception not necessary to be noticed. 16 Stat. 210; Rev. Stat., sects. 4937, 4941.

Exclusive ownership of a certain medicinal manufacture, known as "Dr. C. McLane's Liver-Pills," and of the trademark used in advertising and vending the same, is claimed by the complainant; and the record shows that he, on the first day of June, 1872, filed in the Circuit Court a bill of complaint against the respondent, charging that the respondent had unlawfully infringed the said trade-mark; and he prayed for a decree that the respondent shall render an account of the gains and profits made by the infringement, and for an injunction.

Service was made, and the respondent appeared and filed an answer. Proofs were taken; and, the parties having been heard, the court entered a decretal order in favor of the complainant, and sent the cause to a master, to compute the amount of the gains and profits. Due report was made by the master, to which the respondent excepted; and the court overruled the exception, confirmed the report of the master, and entered a final decree for the complainant, in the sum of $7,399.35.

All matters in that court having been finally determined, the respondent appealed to this court, and assigns errors as follows: 1. That the court erred in finding that the labels L and K, or either of them, infringed Exhibit F, as set forth in the decretal order. 2. That the court erred in finding that the complainant was entitled to any damages, and in ordering the assessment thereof, and in allowing him costs. 3. That the court erred in ordering an account of the sales of Exhibits L and K, prior to the 16th of October, 1871, the date of the first use of Exhibit H

by the complainant.    4. That the court erred in overruling the respondent's exception to the master's report.

Medicines of the kind described were first prepared and sold by the physician whose name the pills bear, by putting the same in wooden boxes, labelled with the name of the inventor. For ten years, or more, he used the pills in his practice; but the evidence shows that, on the 19th of June, 1844, he sold the right to use the same to Jonathan Kidd, who, for a year or more, prepared and sold the pills under that agreement, when he formed a partnership with John Fleming, under the style of "Jonathan Kidd & Co.;" which firm continued to prepare and sell the pills until March 29, 1853, when the senior partner died.

They (the firm) dealt largely in the business; and, as early as 1847, in order to designate the medicine as an article of their own manufacture, and to prevent imposition and fraud, they commenced putting the pills in wooden boxes, of uniform size, shape, and appearance, each box containing twenty-two pills, with the name of the original inventor stamped in red wax upon the cover of each box, around which they placed the red label or wrapper described in the bill of complaint. Beyond doubt, that label, with its devices, and the red seal on the box, constituted the trade-mark by which the firm made known to their customers and the public the genuine pills which they prepared and sold; the firm being at the time the owners of the original recipe, and having the exclusive right to make and vend the pills.

Within a month subsequent to the death of the senior partner of the firm, his executors sold and conveyed all the interest of the decedent in the business to the surviving partner and the complainant, whereby they, under the firm name of " Fleming Brothers," acquired not only the title to the recipe and the right to make and vend the pills, but also the right to use the labels and trade-marks used by the former owners. Possessed of the whole interest, they (the firm, Fleming Brothers) prosecuted the business, with some changes in the individual partners, until July 1, 1865, when the present complainant sold out his whole interest to his brother, John Fleming, who, as sole proprietor of what the firm owned, continued the business until the 2d

of November, 1870, when he died, leaving a last will and testament.

When that firm acquired the entire interest, they immediately enlarged the business, and in the year 1855 they adopted the dark label, Exhibit F, which is fully and minutely described in the bill of complaint; and the complainant avers that it has since been used in the business, with no other substantial alterations than what are shown in Exhibit H, mentioned in the decretal order.

Both parties agree that the complainant, by the will of his deceased brother, acquired all the rights which the deceased had in the business; and the record shows that he has, since the probate of the will on the 9th of November, 1870, been preparing and vending said pills, and using the labels and trademarks to designate their genuineness and to commend their value and utility.

Evidence was introduced by the respondent, whose name is James H. McLean, that he commenced in 1849, in St. Louis, to manufacture his own medicines; that in 1851 he began to manufacture and sell liver-pills, under the name of "Dr. McLean's Universal Pills," using first a type-printed label in red letters, which was changed, in 1852, to a lithographed red label, called in the decretal order "Exhibit L," which was used down to 1866, except that about 1863 he added to his name the initials "J. H.," so that the label read, "Dr. J. H. McLean's Universal Pills;" that in 1866 he changed his label to the one referred to in the decretal order as "Exhibit K," which he continued to use until May 21, 1872, when he adopted a new label, the use of which does not infringe the trade-mark of the complainant.

Governed by these facts as stated, the court will examine the first error assigned; which is, that the court erred in finding that the labels L and K infringed complainant's Exhibit H, as set forth in the decretal order. By the order, the respondent, James H. McLean, his agents, employés, and servants, are perpetually enjoined and restrained from using, or causing to be used, the words "Dr. J. H. McLean's Universal Pills or Vegetable Liver Pills," or the words "Dr. McLean's Universal Pills," upon any label or wrapper for boxes or other pack-

ages of pills resembling or in imitation of the labels, wrappers, or trade-mark of the complainant, described in his bill of complaint as " Exhibit H," whether in style of engraving, printing, or lettering; and from vending or exposing for sale, or causing to be vended or exposed for sale, any article of pills having upon the boxes or other packages thereof any such labels or wrappers so made in imitation of or resemblance to the said labels or wrappers of the complainant.

Equity gives relief in such a case, upon the ground that one man is not allowed to offer his goods for sale, representing them to be the manufacture of another trader in the same commodity. Suppose the latter has obtained celebrity in his manufacture, he is entitled to all the advantages of that celebrity, whether resulting from the greater demand for his goods or from the higher price the public are willing to give for the article, rather than for the goods of the other manufacturer, whose reputation is not so high as a manufacturer. Where, therefore, a party has been in the habit of stamping his goods with a particular mark or brand, so that the purchasers of his goods having that mark or brand know them to be of his manufacture, no other manufacturer has a right to adopt the same stamp; because, by doing so, he would be substantially representing the goods to be the manufacture of the person who first adopted the stamp, and so would or might be depriving him of the profit he might make by the sale of the goods which the purchaser intended to buy. *Seixo* v. *Provezende.* Law Rep. 1 Ch. 195.

What degree of resemblance is necessary to constitute an infringement is incapable of exact definition, as applicable to all cases. All that courts of justice can do, in that regard, is to say that no trader can adopt a trade-mark, so resembling that of another trader, as that ordinary purchasers, buying with ordinary caution, are likely to be misled.

Unreasonable delay in bringing a suit is always a serious objection to relief in equity; but cases arise in litigations of the kind before the court where the complainant may be entitled to an injunction to restrain the future use of a trade-mark, even when it becomes the duty of the court to deny the prayer of the bill of complaint for an account of past gains and profits. *Harrison* v. *Taylor*, 11 Jur. N. S. 408.

In such cases, the question is not whether the complainant was the original inventor or proprietor of the article made by him, and on which he puts his trade-mark, nor whether the article made and sold under his trade-mark by the respondent is equal to his own in value or quality, but the court proceeds on the ground that the complainant has a valuable interest in the good-will of his trade or business, and, having adopted a particular label, sign, or trade-mark, indicating to his customers that the article bearing it is made or sold by him or by his authority, or that he carries on business at a particular place, he is entitled to protection against one who attempts to deprive him of his trade or customers by using such labels, signs, or trade-mark without his knowledge or consent. *Coats* v. *Hol-brook*, 2 Sandf. (N. Y.) Ch. 586; *Partridge* v. *Menck*, 2 Barb. (N. Y.) Ch. 101.

Everywhere courts of justice proceed upon the ground that a party has a valuable interest in the good-will of his trade, and in the labels or trade-mark which he adopts to enlarge and perpetuate it. Hence it is held that he, as proprietor, is entitled to protection as against one who attempts to deprive him of the benefits resulting from the same, by using his labels and trade-mark without his consent and authority. Decided cases to that effect are quite numerous, and it is doubtless correct to say that a person may have a right in his own name as a trade-mark as against a trader or dealer of a different name; but the better opinion is, that such a party is not, in general, entitled to the exclusive use of a name, merely as such, without more. *Millington* v. *Fox*, 3 Myl. & Cr. 338; *Dent* v. *Turpin*, 2 Johns. & Hem. 139; *Meneely et al.* v. *Meneely*, 62 N. Y. 427.

Instead of that, he cannot have such a right, even in his own name, as against another person of the same name, unless such other person uses a form of stamp or label so like that used by the complaining party as to represent that the goods of the former are of the latter's manufacture. Nor will any other name, merely as such, confer any such exclusive right, unless the name is printed in some particular manner in a label of some peculiar characteristics, so that it becomes, to some extent, identified with a particular kind of goods, or when the name is used by the party, in connection with his place of busi-

ness, in such a manner that it assumes the character of a trade-mark within the legal meaning of that term, and as such entitles the party to the protection of a court of equity, to prevent others from infringing the proprietor's exclusive right.  *Gilman* v. *Hunnewell*, 122 Mass. 139; *Colladay* v. *Baird*, 4 Phil. (Pa.) 139; *Sykes* v. *Sykes*, 3 B. & C. 541; *Croft* v. *Day*, 7 Beav. 89; *Burgess* v. *Burgess*, 3 DeG., M. & G. 896; *Holloway* v. *Holloway*, 13 Beav. 209; *Rogers and Others* v. *Taintor*, 97 Mass. 291.

Much must depend, in every case, upon the appearance and special characteristics of the entire device; but it is safe to declare, as a general rule, that exact similitude is not required to constitute an infringement or to entitle the complaining party to protection.  If the form, marks, contents, words, or the special arrangement of the same, or the general appearance of the alleged infringer's device, is such as would be likely to mislead one in the ordinary course of purchasing the goods, and induce him to suppose that he was purchasing the genuine arti-cle, then the similitude is such as entitles the injured party to equitable protection, if he takes seasonable measures to assert his rights, and to prevent their continued invasion.  *James* v. *James*, Law Rep. 13 Eq. 425; *Singleton* v. *Bolton*, 3 Doug. 293; *Morrison* v. *Salmon*, 2 Man. & G. 385; *Boardman* v. *Meriden Britannia Co.*, 35 Conn. 413.

Such a proprietor, if he owns or controls the goods which he exposes to sale, is entitled to the exclusive use of any trade-mark adopted and applied by him to the goods, to distinguish them as being of a particular manufacture and quality, even though he is not the manufacturer, and the name of the real manufacturer is used as part of the device.  *Walton* v. *Crowley*, 3 Blatchf. 440; *Emerson* v. *Badger*, 101 Mass. 82.

Equity courts will not, in general, refuse an injunction on account of delay in seeking relief, where the proof of infringe-ment is clear, even though the delay may be such as to preclude the party from any right to an account for past profits.  *Rodg-ers* v. *Rodgers*, 31 L. T. 285; *Blackwell* v. *Crabb*, 45 L. J. Pt. I. 505.

Positive proof of fraudulent intent is not required where the proof of infringement is clear, as the liability of the infringer

arises from the fact that he is enabled, through the unwarranted use of the trade-mark, to sell a simulated article as and for the one which is genuine. *Wotherspoon* v. *Currie,* Law Rep. 5 App. Cas. 512.

Nor is it necessary, in order to give a right to an injunction, that a specific trade-mark should be infringed; but it is sufficient that the court is satisfied that there was an intent on the part of the respondent to palm off his goods as the goods of the complainant, and that he persists in so doing after being requested to desist. *Woollam* v. *Ratcliff*, 1 Hem. & M. 259.

Apply these rules to the case, and it is clear that the charge of infringement is satisfactorily proved in this case.

Words or devices, or even a name in certain cases, may be adopted as trade-marks which are not the original invention of the party who appropriates the same to that use; and courts of equity will protect the proprietor against any fraudulent use or imitation of the device by other dealers or manufacturers. Property in the use of a trade-mark, however, bears very little analogy to that which exists in copyrights or in patents for new inventions or discoveries, as they are not required to be new, and may not involve the least invention or skill in their discovery or application. Phrases, or even words in common use, may be adopted for the purpose, if, at the time of their adoption, they were not employed by another to designate the same or similar articles of production or sale. Stamps or trade-marks of the kind are employed to point out the origin, ownership, or place of manufacture or sale of the article to which it is affixed, or to give notice to the public who is the producer, or where it may be purchased. *Canal Company* v. *Clark*, 13 Wall. 311.

Subject to the qualification before explained, a trade-mark may consist of a name, symbol, figure, letter, form, or device, if adopted and used by a manufacturer or merchant in order to designate the goods he manufactures or sells to distinguish the same from those manufactured or sold by another, to the end that the goods may be known in the market as his, and to enable him to secure such profits as result from his reputation for skill, industry, and fidelity. Upton, Trade-marks, 9; *Taylor* v. *Carpenter*, 2 Sandf. (N. Y.) Ch. 603; Coddington, Dig. 9.

Complainant's pills have been in the market as a vendible

article for more than forty years, and during that whole period have been sold under trade-marks of the forms heretofore sufficiently described, and they are still sold under the trade-mark mentioned in the decretal order.

Difficulty frequently arises in determining the question of infringement; but it is clear that exact similarity is not required, as that requirement would always enable the wrong-doer to evade responsibility for his wrongful acts. Colorable imitation, which requires careful inspection to distinguish the spurious trade-mark from the genuine, is sufficient to maintain the issue; but a court of equity will not interfere, when ordinary attention by the purchaser of the article would enable him at once to discriminate the one from the other. Where the similarity is sufficient to convey a false impression to the public mind, and is of a character to mislead and deceive the ordinary purchaser in the exercise of ordinary care and caution in such matters, it is sufficient to give the injured party a right to redress, if he has been guilty of no laches. *Amoskeag Manufacturing Co.* v. *Spear*, 2 Sandf. S. C. 599; Coddington, Dig. 109; *McAndrew* v. *Bassett*, 4 DeG., J. & S. 380.

Argument to show that the name of the pills, as given in the trade-mark of the respondent, was of a character to mislead and deceive, is scarcely necessary, as they are *idem sonans* in the usual pronunciation; nor can it be doubted that the form of the box containing the pills and the general appearance of the wrapper which surrounded it were calculated to have the same effect. Mention may also be made of the fact that the color of the label and the wax impression on the top of the box are well suited to divert the attention of the unsuspecting buyer from any critical examination of the prepared article.

Chancery protects trade-marks upon the ground that a party shall not be permitted to sell his own goods as the goods of another; and, therefore, he will not be allowed to use the names, marks, letters, or other *indiciæ* of another, by which he may pass off his own goods to purchasers as the manufacture of another. *Croft* v. *Day*, 7 Beav. 84; *Perry* v. *Truefitt*, 6 id. 66; *Newman* v. *Alford*, 51 N. Y. 192.

Witnesses in great numbers were called by the complainant, who testified that the Exhibits L and K of the respondent were

calculated to deceive purchasers ; and the reasons given by them in support of the conclusion are both persuasive and convincing. Difference between those exhibits and Exhibits F and H of the complainant undoubtedly exist ; and still it is manifest that the general appearance of the package in the respects mentioned, and others which might be suggested, is well calculated to mislead and deceive the unwary and all others who purchase the article without opening the box and examining the label. *Caswell et al.* v. *Davis,* 58 N. Y. 223.

Two trade-marks are substantially the same in legal contemplation, if the resemblance is such as to deceive an ordinary purchaser giving such attention to the same as such a purchaser usually gives, and to cause him to purchase the one supposing it to be the other. *Gorham Company* v. *White,* 14 Wall. 511.

Suffice it to say, without entering further into details, the court is of the opinion that the first assignment of error must be overruled, and that the injunction was properly granted to prevent infringement subsequent to the filing of the bill of complaint.

Suppose that is so, still the respondent contends that the court erred, as alleged in the second assignment of errors, and that the complainant is not entitled to an account, nor to a decree for gains, profits, or damages. Support to that proposition is attempted to be drawn from the long delay of the complainant, and those under whom he claims, to take any legal steps to protect their alleged rights. Opposed to that, it is insisted by the complainant that no such defence is open to the respondent, as it was not set up in the answer. Nothing of the kind is directly set up in the answer ; but the respondent denies all intent to injure or defraud the complainant, and avers that he has been engaged during the last twenty years in perfecting his pills, and that he had no idea that his trade-marks infringed the trade-marks of the complainant.

Proofs were taken upon both sides upon the subject ; and the respondent, in his petition for rehearing filed in the court below, expressly alleges that the immediate predecessor of the complainant was perfectly familiar with the pills manufactured by the respondent, and well knew that the respondent used the labels in question ; that the agent of the complainant, May 20,

1872, called on the respondent and remonstrated with him for using the label Exhibit K, and that he on the following day adopted a different label, as therein fully explained.

Examined in the light of these suggestions, the court is of the opinion that the question presented in the second assignment of error is open for re-examination. *Sullivan* v. *Portland, &c. Railroad Co.*, 94 U. S. 806.

Repetition of the facts is unnecessary, as it sufficiently appears that the respondent has been engaged in preparing and selling his pills for more than forty years; that during that period, or more than half of it, he has been using labels and trade-marks corresponding more or less to those used by the predecessors of the complainant, some of whom, during all or most of that time, knew what the labels and trade-marks were which were used by the respondent, the evidence to that effect being full and decisive.

Negotiations took place at one time between the respondent and one of the predecessors of the complainant for an interchange of commodities, with a view that both commodities might be sold at each of their respective places of business.

Evidence of a decisive character is exhibited in the record to show that the complainant or his predecessor knew throughout what description of labels and trade-marks the respondent was using; and it does not appear that any objection was ever made, except as heretofore stated and explained. Once, the respondent was requested to insert the initials of his Christian name before his surname, in the label; and it appears that he immediately complied with the request.

Cases frequently arise where a court of equity will refuse the prayer of the complainant for an account of gains and profits, on the ground of delay in asserting his rights, even when the facts proved render it proper to grant an injunction to prevent future infringement. *Harrison* v. *Taylor*, 11 Jur. N. s. 408; Cox, Trade-marks, 541.

Relief of the kind is constantly refused, even where the right of the party to an injunction is acknowledged because of an infringement, as in case of acquiescence or want of fraudulent intent. *Moet* v. *Couston*, 33 Beav. 578; *Edelsten* v. *Edelsten*, 1 De G., J. & S. 185; *Millington* v. *Fox*, 3 Myl. & Cr. 398;

*Myeth* v. *Stone*, 3 Story, 284 ; *Beard* v. *Turner*, 13 Law Times, N. S. 747 ; *Estcourt* v. *Estcourt*, Law Rep. 10 Ch. 276 ; Coddington, Dig. 162 ; High, Injunc. 405.

Acquiescence of long standing is proved in this case, and inexcusable laches in seeking redress, which show beyond all doubt that the complainant was not entitled to an account nor to a decree for gains or profits ; but infringement having been proven, showing that the injunction was properly ordered, he is entitled to the costs in the Circuit Court ; but the decree for an account and for the supposed gains and profits being erroneous, the respondent, as appellant, is entitled to costs in this court.    Browne, Trade-marks, sect. 497.

Decree as to the injunction and costs in the Circuit Court will be affirmed, but it will be reversed as to the decree for an account and as to the allowance for gains and profits, with costs in this court for the appellant ; and the cause will be remanded with direction to enter a decree in conformity with the opinion of this court ; and it is

*So ordered.*