## MERRIAM *v.* SMITH and others.

*(Circuit Court, D. Massachusetts.   April 17, 1882.)*

1. **PATENT—RIGHTS OF ASSIGNEE.**

    The mere assignment of a patent would give the assignee no right to damages or profits already accrued; but where the deeds of assignment contain the words "also, any and all claims which I now have or may have against any person or persons by reason of any infringement of the said patent, or any part thereof," the case will be considered as if the assignors were plaintiffs.

2. **BOTH PARTIES INNOCENT—RULE OF DILIGENCE.**

    Where there was no acquiescence on the part of the patentee, nor conscious infringement on the part of the defendants, there was no moral delinquency on either side, or an actual estoppel; and where both parties are innocent, diligence should be required of him whose property is to be protected.

3. **INFRINGEMENT—RELIEF—DAMAGES.**

    In case of an infringement under such circumstances, an injunction should be granted, and damages which a court of law would give.

In Equity.

*Benj. F. Thurston* and *Fred'k P. Fish,* for complainant.

*Geo. L. Roberts & Bros.,* for defendants.

LOWELL, C. J.   This bill is brought for an injunction and account, upon patent No. 49,349, issued August 8, 1865, to Benjamin U. Lyon, the inventor, and to his assignees and partners, all of Stamford, Connecticut, for an improved machine for forming welts, by means of pressure rollers and guides, combined and operating as shown in the specification and drawings.

The inventor and his partners were carriage-makers, and the machine was found useful in forming the leather trimmings used in their business, and it was so used by them for about 16 years. Two or three years after the date of the Lyon patent, one Stimpson introduced a machine for making stay-strips for the seams of boots and shoes. This machine, improved somewhat from an English model, has gone into very general use, and has become of great value in the important branch of manufacture to which it has been applied.

I have no doubt, upon the evidence, that the Lyon machine was new and useful, and that the Stimpson machine, which has been used by the defendants and a great many others, infringes the Lyon patent. Stimpson, and the manufacturers of boots and shoes, were wholly unaware of the existence of this patent; and the patentees were equally ignorant of the Stimpson machine.

An interesting question thereupon arises, how far a court of equity

should go in decreeing profits for past infringements under such very peculiar circumstances. The original owners of the patent never introduced the machine into general use, though they found it of some value in their own business. The plaintiff bought the patent of them for a trifling sum, to strengthen his position in the serious litigation between these parties concerning stay-strips for boots and shoes, and the machinery for making and applying them, in which two or three different cases have already been decided in this court. The mere assignment of a patent would give the assignee no right to damages or profits already accrued. *Elwood* v. *Christy*, 18 C. B. (N. S.) 494. But these deeds all contain the following words: "Also, any and all claims which I now have or may have against any person or persons by reason of any infringement of the said patent, or any part thereof." I shall, therefore, consider the case as if Lyon and his partners were the plaintiffs.

A practice has grown up in the circuit courts of looking upon a patentee's remedies at law and in equity as concurrent, and upon his right to profits as something which follows necessarily from the establishment of his title. But it has been decided by the supreme court at this term that a court of equity is to proceed under the patent law just as it does in any other case of a violated legal right, and to grant relief only when the remedy at law is inadequate. On this principle the decision in that case was that a bill for an account of profits will not be sustained if brought after the patent has expired, because there can then be no injunction. *Root* v. *Lake Shore, etc., Ry. Co.* 11 FED. REP. 349, note.

That decision puts this case in the same line with cases upon patents, trade-marks, and copyrights, in England, before the jurisdictions of law and equity were blended by the late judicature act. "Now, however, an action for past infringement of an expired patent may be brought in the chancery division as well as in any other division of the high court of justice." Johns. Pat. Man. (4th Ed.) 234. The question for me is, what was the rule before this statute?

This question may be answered in the words of Lord Brougham, who declared it to be a principle of equity "that a party who claimed a right should not lie by, and by his silence or acquiescence induce another to go on expending his money and incurring risk, and afterwards, if profit has been made, come and claim a share in that profit." *Crossley* v. *Derby Gas L. Co.* 1 Webst. Pat. Cas. 120. This principle was applied by the supreme court to a case of trade-marks (*McLean* v. *Fleming*, 96 U. S. 245) in which an injunction was

granted, but no account of profits because of the long acquiescence of the plaintiff. To the authorities cited in the learned opinion of *Clifford*, J., in that case, may be added *Baily* v. *Taylor*, 1 Russ. & M. 73; *Parrott* v. *Palmer*, 3 Myl. & K. 632.

This case differs from all those which I have seen in this, that there was no acquiescence on the one side nor conscious infringement on the other, as I have already shown. It cannot be said, therefore, that there was the slightest moral delinquency on either side, or an actual estoppel. The simple inquiry is, which party must suffer for the delay?

It seems to me clear that the patentees should be left to their action for damages. One ground of the liability to account for profits is that the plaintiff may be supposed to have lost what the defendant has made by infringing the patent; but in this case the patentees had no intention of making machines to be used in the manufacture of boots and shoes. They were evidently not aware that they had lost the profits which are now demanded, for they sold their patent, if the deeds express the truth, for $100 and a license to use the invention in their own business. In truth, there was no interference, and the very fact that both sides were so long in ignorance of this patent, and of its infringement, proves this. The damages which a court of law would give are therefore sufficient for this case. Since both parties were innocent, diligence should be required of him who has property to be protected; the burden must be on him. The registration of his patent may be constructive notice; but it is to be observed that the Lyon patent purported to apply to a different trade, and that the Stimpson machine was not patented, so that no one had occasion to go to the patent-office or make any inquiries upon the subject. There was, therefore, no want of diligence on the part of the manufacturers; and, as courts of equity look to facts rather than constructive or arbitrary conclusions, when they can do so without interfering with legal rights, it follows that the party holding the affirmative, and asking for the interposition of the court to give him profits rather than damages, must fail.

It does not follow that an injunction should not be granted; that is given, of right, when a legal title is to be vindicated, and there is no estoppel, (*Fullwood* v. *Fullwood*, L. R. 9 Ch. Div. 176;) nor that there should not be an account from the time of notice to the defendants of the plaintiff's claim. *Edelsten* v. *Edelsten*, 1 De G., F. & J. 185.

Decree for an injunction, and an account from the date of the bill, or of any earlier notice to the defendants of the plaintiff's title.