CHURCH & DWIGHT CO. v. RUSS et al.

(Circuit Court, D. Indiana. January 23, 1900.)

No. 9,580.

TRADE-MARKS—INFRINGEMENT.
A trade-mark used by the owner on packages of baking soda and saleratus manufactured by it is infringed by the use thereof by another on packages of baking powder, the articles being of the same class.

Dickerson & Brown, for complainant.
Andrew Anderson, for defendants.

BAKER, District Judge. This is a suit to enjoin the infringement of a trade-mark or trade-symbol, and to recover damages for its infringement. It is alleged that the complainant since July 1, 1896, has been engaged in the state of New York in preparing

and marketing baking soda and saleratus used for cooking pur-
poses, and prior to that time its predecessor, under the name of
Church & Co., had been engaged in the same business at the same
place. On July 1, 1896, the complainant succeeded to the business
of the firm of Church & Co., and to all its interest in said busi-
ness, including any and all trade-marks and trade-names used by
said firm in its business, and to the rights thereunder which had
accrued to that firm. Since the year 1874 the complainant and its
predecessor have prepared and put upon the market a new and orig-
inal preparation of soda and saleratus to be used for cooking pur-
poses, and, to indicate the origin and genuineness of the prepara-
tion, it and its predecessor have put upon the packages containing
the preparation marketed by them, as a trade-mark and trade-
symbol, a representation of a bared arm, the hand grasping the
handle of a hammer; the arm being shown raised in the position
which it would assume when about to strike with the hammer. At
all times since 1874 the complainant and its predecessor have pre-
pared soda and saleratus used for cooking purposes, and placed
them on the market in packages having this trade-mark upon them.
The complainant's predecessor devised and adopted the trade-mark,
which was different from any which had been used to designate
soda and saleratus. This trade-mark has been universally known
and recognized as indicating that the articles or packages having
such trade-mark were manufactured by the complainant or its
predecessor, and said trade-mark became, and ever since has been,
a valuable property right, and a protection to purchasers of soda
or saleratus used for cooking purposes made and sold by com-
plainant and its predecessor. The above-specified trade-mark is
the exclusive property of the complainant, and it is entitled to its
sole and exclusive benefit and use. The complainant and its pred-
ecessor have at all times insisted on its trade-mark, and have noti-
fied the public thereof. This trade-mark has become universally
known as the property of the complainant and its predecessor, and
has been uniformly respected as such until its infringement by re-
spondents. For the purpose of further informing the public of the
complainant's rights in and to said trade-mark, it caused it to be
registered on January 26, 1897, according to the statutes of the
United States. This trade-mark has been used by the complainant
and its predecessor for more than 20 years continuously in connec-
tion with packages containing soda and saleratus, in commerce
with Canada and other foreign countries, and has been very exten-
sively used throughout the United States. The soda and saleratus
prepared and sold by it and its predecessor have been of a superior
quality, and have been prepared for the market with care, accord-
ing to their peculiar methods; and the soda and saleratus have met
with great favor since they were placed upon the market, and the
demand for them has increased from year to year. The exclusive
right to this trade-mark is of great value in its business, and the re-
spondents' infringement of it has caused great and irreparable loss,
to an amount exceeding $5,000. The respondents are engaged in
manufacturing and selling baking powder used for cooking pur-

poses, the active ingredient of which is soda, prepared and put up in packages having a representation exactly similar to the trademark of the complainant. It is further alleged that the respondents, knowing the high reputation and deserved celebrity of the baking soda and saleratus manufactured and sold by the complainant, have pirated its trade-mark, with the intent to enlarge their sales of baking powder, and to deceive the public into the belief that the baking powder put up in packages having said trade-mark is manufactured and sold by the complainant, or with its authority and consent. The complainant has notified the respondents of its right to the exclusive use of said trade-mark, and has requested them to desist from its use, which they have refused to do, and they insist on their right to use such trade-mark upon the packages of baking powder sold by them. The respondents admit all the material facts above stated, except that they deny they infringe the complainant's trade-mark by using the same on their packages of baking powder, because, as they allege, baking powder does not belong to the same class of goods as baking soda and saleratus. They also deny that they intend to, or do, deceive the public by using the complainant's trade-mark on their baking powder, or that the complainant is damaged by such use. They also allege that on March 18, 1896, they registered said trade-mark, in accordance with the statute of the state of Indiana, to be used upon packages of baking powder manufactured and sold by them.

The evidence is conflicting on the question whether the public are, or are likely to be, deceived by the respondents' use of the complainant's trade-mark. The averments of the complaint and the admissions of the respondents make it manifest that the complainant is, and long has been, the exclusive owner of the trade-mark alleged to be infringed. The respondents admit that they have appropriated the complainant's trade-mark for use upon packages of baking powder, and assert their right to continue its use on the ground that the complainant has always used its trade-mark on packages of baking soda and saleratus, and never upon baking powder, and that the latter is a different class of goods from the former, and that therefore the respondents do not infringe the rights of the complainant by the use of its trade-mark on their packages of baking powder. It is also insisted that the public is not deceived, or likely to be deceived, nor is the complainant injured, by such use.

The tendency of the courts at the present time seems to be to restrict the scope of the law applicable to technical trade-marks, and to extend its scope in cases of unfair competition. Mill Co. v. Alcorn, 150 U. S. 460, 14 Sup. Ct. 151, 37 L. Ed. 1144; Laughman's Appeal, 128 Pa. St. 1, 18 Atl. 415, 5 L. R. A. 599; Koehler v. Sanders, 122 N. Y. 65, 25 N. E. 235, 9 L. R. A. 576; Castle v. Siegfried, 103 Cal. 71, 37 Pac. 210; Fleischmann v. Starkey (C. C.) 25 Fed. 127. As this case falls more appropriately under the head of an infringement of a technical trade-mark, rather than under the head of unfair competition, it becomes desirable to ascertain as nearly as may be the distinctions, as well as the points of resemblance, between them. The underlying principle of each is the same, namely, the preven-

tion of that which in its operation and results, and usually in intention, is a fraud upon the public, and an injury to the rival trader. That this is the underlying principle is clearly shown in the leading case on technical trade-mark law (Canal Co. v. Clark, 13 Wall. 311, 322, 20 L. Ed. 581, 583), where the supreme court say:

"This will be manifest when it is considered that, in all cases where rights to the exclusive use of the trade-mark are invaded, it is invariably held that the essence of the wrong consists in the sale of the goods of one manufacturer or vendor as those of another, and that it is only when this false representation is directly or indirectly made that the party who appeals to a court of equity can have relief. This is the doctrine of all the cases."

But, while the idea of fraud or imposition lies at the foundation of the law of technical trade-marks as well as the law of unfair competition, it must be borne in mind that fraud may rest in actual intent shown by the evidence, or may be inferred from the circumstances, or may be conclusively presumed from the act itself. In the case of unfair competition the fraudulent intent must be shown by the evidence, or be inferable from the circumstances, while, in the case of the use by one trader of the trade-mark or trade-symbol of a rival trader, fraud will be presumed from its wrongful use. It is commonly said that there is a right of property in a technical trade-mark, and an infringement of it is spoken of as a violation of a property right. Whether this view be correct or not is quite immaterial, because it is universally agreed that some of the rights which are incident to property do inhere in a technical trade-mark. The cases all agree that no one has a right to use another's trade-mark in connection with similar goods; and if he does so use it, and persists therein after being requested to desist, the fraud and imposition which constitute the essence of the injury will be presumed to exist, and relief will be granted without further proof. Lawrence Mfg. Co. v. Tennessee Mfg. Co., 138 U. S. 537, 548, 549, 11 Sup. Ct. 396, 34 L. Ed. 997. In strict trade-mark cases, such as the present case is, a fraudulent intent to injure the complainant, or an actual misleading of the public, need not be proved, as it will be presumed. In Lawrence Mfg. Co. v. Tennessee Mfg. Co., supra, the supreme court says:

"The jurisdiction to restrain the use of a trade-mark rests upon the ground of the plaintiff's property in it, and of the defendant's unlawful use thereof. Boston Diatite Co. v. Florence Mfg. Co., 114 Mass. 69. If the absolute right belonged to the plaintiff, then, if an infringement were clearly shown, the fraudulent intent would be inferred; and, if allowed to be rebutted in exemption of damages, the further violation of the right of property would nevertheless be restrained. McLean v. Fleming, 96 U. S. 245, 24 L. Ed. 828; Menendez v. Holt, 128 U. S. 514, 9 Sup. Ct. 143, 32 L. Ed. 526."

The complainant having acquired the exclusive right to the use of the trade-mark upon baking soda and saleratus, the remaining question is this: Does the baking powder of the respondents belong to the same class of goods as the baking soda and saleratus of the complainant? The respondents admit that their baking powder consists of 25 per cent. of soda, mixed with 75 per cent. of corn-meal starch and tartaric acid. The greater part of the baking powder consists of the starch, used simply as a drier to absorb the moisture

to which the baking powder may be exposed, and thus to prevent the formation of carbonic acid gas by the chemical combination of the soda and acid. Consequently, every time the respondents sell a package of their baking powder, having the complainant's trade-mark upon it, they are actually selling a package a material part of which consists of baking soda. Soda and baking powder are used for the purpose of leavening or lightening dough in the manufacture of bread and cakes, as well as for other domestic uses. They are generally handled by the same class of dealers, and are purchased by the same class of customers. Either is indifferently used, as may be most convenient, to accomplish the same object. To the extent that baking powder is used, to that extent it will necessarily displace the use of soda for baking purposes. They belong to the same class of goods, coming in direct competition with each other in sale and use for the same purpose. The public would readily suppose that the baking powder bearing the complainant's trade-mark was either manufactured by it, or by some one having its authority and consent, and that it vouched for the superiority and high character of the goods bearing such trade-mark. Goods are in the same class whenever the use of a given trade mark or symbol on both would enable an unscrupulous dealer readily to palm off on the unsuspecting purchaser the goods of the infringer as the goods made by the owner of the trade-mark, or with his authority and consent. The fact that the complainant has not used its trade-mark upon packages of baking powder constitutes no ground of defense. It has the right to manufacture or sell baking powder, and to use its trade-mark in connection with such manufacture or sale. The right to use its own trade-mark upon baking powder manufactured or sold by it would be valueless if all others were at liberty to use the same trade-mark on baking powder manufactured or sold by them. Collins Co. v. Oliver Ames & Sons Corp. (C. C.) 18 Fed. 561. A decree may be prepared in accordance with the foregoing views.