## LAYTON PURE FOOD CO. v. CHURCH & DWIGHT CO.

(Circuit Court of Appeals, Eighth Circuit.   September 19, 1910.)

No. 3,348.

*(Syllabus by the Court.)*

1. TRADE-MARKS AND TRADE-NAMES (§ 61*) — INFRINGEMENT — CLASSES OF GOODS—BAKING SODA AND BAKING POWDER IN SAME CLASS.

To sustain a charge of infringement the owner of a trade-mark must have used it on the same class but not necessarily on the same species of goods as the alleged infringer.

Baking soda and baking powder are in the same class, and the use of a trade-mark for the former on the baking powder of a manufacturer other than that of the owner is an infringement.

After one has acquired a trade-mark for one member of a class of goods, in this instance baking soda, another may not acquire the same trade-mark for another member of the class, in this case baking powder, although the former has not applied the trade-mark to that member.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 76; Dec. Dig. § 61.*]

2. TRADE-MARKS AND TRADE-NAMES (§ 86*)— INFRINGEMENT — LACHES — ACCOUNTING—INJUNCTION.

To a suit for an accounting for profits secured by an infringement of a trade-mark the general rule of laches applies that suits will be stayed under ordinary circumstances after, and will not be stayed before, the time fixed by the analogous statute of limitations at law, but that if unusual conditions or extraordinary circumstances make it inequitable to allow the prosecution of the suit after a briefer, or to forbid its maintenance after a longer, period than that fixed by the statute, the court will determine the extraordinary case in accordance with the equities which condition it.

But a suit for injunction against future infringement of a trade-mark is not subject to the general rules of laches and the statute of limitations because repeated or continuous infringements establish no right to continue them, and mere delay in bringing suit to enjoin them does not prove an abandonment of his rights by an owner of a trade-mark, or an estoppel from preventing subsequent infringement.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Dec. Dig. § 86.*]

3. TRADE-MARKS AND TRADE-NAMES (§§ 97, 98*)—INJUNCTION—ACCOUNTING.

The owner of a trade-mark on baking soda and baking powder, who had used it on the former but never on the latter, learned that the defendant corporation was using it on baking powder but not upon baking soda about nine years before it brought suit for an injunction and an accounting.

*Held*, the complainant was entitled to an injunction against future infringement, but its accounting must be limited to the time subsequent to the commencement of the suit.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 110-112; Dec. Dig. §§ 97, 98.*]

Appeal from the Circuit Court of the United States for the Eastern District of Missouri.

Bill by the Church & Dwight Company against the Layton Pure Food Company. Decree for complainant, and defendant appeals. Affirmed.

See, also, 182 Fed. 24.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

E. E. Huffman and A. C. Fowler, for appellant.

Paul Bakewell and Luke E. Hart (Brown & Seward, on the brief), for appellee.

Before SANBORN and VAN DEVANTER, Circuit Judges.

SANBORN, Circuit Judge.   This is an appeal from a decree which enjoins the Layton Pure Food Company, the defendant below, from infringing the trade-mark of the Church & Dwight Company, which consists of the representation of a cow which was registered in 1876, No. 3,884, and again in 1883, No. 10,118, by John Dwight & Co., the predecessor in interest of the complainant, as "a distinguishing mark for our baking soda, saleratus and baking powder."   In the facsimile of the label which accompanies the declaration for the first registration the picture of the cow appears inclosed in an annular band upon which are printed the words "John Dwight & Co., Soda."   On October 30, 1900, the complainant, a corporation which succeeded John Dwight & Co., registered the annular band as its trade-mark for the same goods, No. 35,359, and at various times it claimed and registered other trade-marks for these goods some of which are described in the opinion in the case between these parties for the infringement of the trade-mark in the representation of the annular band which is filed herewith.   There is no material difference in the titles to the trade-mark for the picture of the annular band and that for the picture of the cow.   The titles to both are founded upon an adoption in 1876 and a use by John Dwight & Co. thereafter until 1896, when the complainant succeeded them and an adoption by the complainant in 1896, and its subsequent use of them.   The only difference in the use by the defendant is that it commenced to use the picture of the cow in 1894 and the picture of the annular band in 1897.

There are two defenses, conditioned by evidence that does not differ materially, that are common to both suits.   They are: (1) That a party can have but a single trade-mark for the same class of goods, and that, as John Dwight & Co. used each of these trade-marks in association on the same labels with other devices and trade-marks, some of which they or the complainant registered, they and it abandoned and thereby lost their right to the trade-marks in suit; and (2) that the complainant without giving notice of the assignment of the trade-mark to it has used continuously the name John Dwight & Co. on some of its labels, although it succeeded that firm in 1896, dismantled its factory in New York City, and thereafter made its products at Solvay, near Syracuse, N. Y., and although John Dwight died more than four years before the bill in this suit was filed.   For the reasons which have been stated at some length in the opinion regarding the infringement of the trade-mark in the annular band, these defenses cannot be sustained.   There remain for consideration the contentions that there was no infringement of the trade-mark in the cow and that the complainant was guilty of laches fatal to this suit.

While the colors, words, and devices other than the representation of the cow upon the labels of the defendant differ from those upon the labels of the complainant, the picture of the cow is so dominant

and striking a feature of the labels of each that a look at them is an ocular demonstration that the use of this picture on the labels of the defendant is well calculated to induce purchasers, exercising such care as buyers ordinarily use, to buy the articles offered under it in the belief that they are those of the same class made by the complainant, and the defendant cannot escape infringement on account of the difference in the dress of the goods. McLean v. Fleming, 96 U. S. 245, 251, 24 L. Ed. 828; Kann v. Diamond Steel Co., 89 Fed. 706, 711, 32 C. C. A. 324; Walter Baker & Co. v. Puritan Pure Food Co. (C. C.) 139 Fed. 680, 682; Walter Baker & Co. v. Delapenha (C. C.) 160 Fed. 746, 750.

But the evidence is convincing that the complainant's use of the picture of the cow was practically limited to baking soda, while the defendant's use of it was restricted to baking powder, and counsel argue that these articles are in different classes, so that a trade-mark for one manufacturer for baking soda is not infringed by its use by another manufacturer for baking powder, and that, while the complainant has a trade-mark in the picture of the cow for baking soda, the defendant has acquired one in this picture for baking powder. Upon the question whether the articles are in the same class or in different classes the witnesses directly contradict each other; but these pertinent facts were well established by the evidence. Baking soda and baking powder are used to leaven or raise dough in making bread. The active principle of each is bicarbonate of soda or baking soda. It is necessary to add some suitable acid, such as lactic acid, cream of tartar, acid phosphates, or alum to bicarbonate of soda to set its leavening power at work, and baking soda is an article to which such an acid must be added in order to raise the dough to make the bread. Baking powder contains, mechanically mixed together, the bicarbonate of soda, some suitable acid to set its leavening power at work, and a filler or dryer. Baking soda and baking powder are both put up and sold in the form of a powder, and they are both used to make bread. The demand for baking soda is diminished by the use of baking powder, and the demand for baking powder is diminished by the use of baking soda. The filler commonly used to make baking powder is cornstarch, and baking powder is almost exclusively used in the household for making bread, while baking soda is also used to correct the acidity of milk, vegetables, a sour stomach, or indigestion, uses to which baking powder may not be applied.

The general rule of law upon this subject is that the owner must have used his trade-mark on the same class but not necessarily on the same species of goods as the alleged infringer in order to entitle him to its protection against infringement. Paul on Trade-Marks, § 202, and cases there cited. The issue here really harks back to the fundamental question that conditions every disputed infringement of a trade-mark, viz.: Is the defendant's use of the mark calculated to induce a purchaser exercising such care as buyers commonly use to purchase the goods of the defendant in the belief that they are those of the complainant? The Church & Dwight Company owned its trade-mark of the picture of the cow, and it had the right to its exclusive use on

its baking soda to the full extent of the business it had acquired or could acquire therein. The use of that mark on baking soda or any article of its class manufactured by another in such a way as is calculated to diminish the complainant's business or restrict its trade by inducing purchasers to buy the article to which the mark is affixed, in the mistaken belief that that article is the product of the complainant, is necessarily an infringement of that right as well as a deception of the buyers. The facts that baking soda and baking powder are generally purchased and used for the same purpose, that the sale and use of one for the common purpose diminishes the sale and use of the other, and that the active element of each is the same, lead our minds to the conclusion that they must be in the same class, that the application of the complainant's trade-mark for baking soda to the baking powder made by another is calculated to induce purchasers to buy it as the product of the complainant, and that it is an infringement of its trade-mark. This decision has not been reached without a careful consideration of the argument of counsel for the defendant to the contrary, of their earnest contention that, inasmuch as the complainant has never used its picture of a cow on baking powder, it was and is without right so to use it, and that the defendant through its later and exclusive use of this mark on baking powder alone had acquired a common-law trade-mark in it for use upon that article and of the cases which they cite in support of these positions. Filkins v. Blackman, 13 Blatchf. 440, 9 Fed. Cas. pp. 50, 52, No. 4,786; Independent Baking Powder Co. v. Boorman (C. C.) 175 Fed. 448, 455, and Celluloid Mfg. Co. v. Read (C. C.) 47 Fed. 712. But the conclusion we have reached seems to us to be not only right, but supported by the better reasons and the more persuasive authority.

In Collins Co. v. Oliver Ames & Sons Corporation (C. C.) 18 Fed. 561, 570, Collins & Co. was a corporation of Connecticut authorized to manufacture all articles of metal. It had made and sold in the United States and in Australia axes, hatchets, broadaxes, picks, and hoes which it had stamped with the name "Collins & Co." until it had acquired a right to be protected in the exclusive use of that trade-mark upon these articles. It had never made or marked, however, any shovels. In this state of the case, Oliver Ames & Sons made some shovels in the state of Massachusetts, stamped them "Collins & Co.," and sold them in Australia, and Judge Blatchford held that it thereby infringed the trade-mark of Collins & Co. He said:

"Clearly those who purchased shovels made by Ames & Sons and stamped 'Collins & Co.' would believe that such shovels were made by the plaintiff, for there was no other Collins & Co. than the plaintiff. This was an unlawful appropriation of the plaintiff's trade-mark. It is true that the plaintiff up to that time had made no shovels. It is also true that Ames & Sons and the defendant have built up a business in shovels marked 'Collins & Co.' But the plaintiff had a right to make shovels, and it had made kindred articles of metal, and its good name and its reputation in its business were wholly connected with the use in its trade of the mark 'Collins & Co.'"

In answer to the argument that because Collins & Co. had never made shovels and Ames & Sons and the defendant, after Collins & Co. had used the mark on its products, had built up a trade in shovels

under the name "Collins & Co.," that mark in respect to shovels became the defendant's property, Judge Blatchford said:

"This view is specious, but unsound. The plaintiff having from 1843 the right to make any article of iron, steel, or other metal, and having gone on from that time, both before and after 1856, extending its manufacture beyond edge tools into digging tools, such as picks and hoes, and having always put the mark 'Collins & Co.' on its best quality of articles, the fact that it did not before 1856 make a digging tool such as the shovels on which, in 1856, Ames & Sons put the mark 'Collins & Co.' does not warrant the conclusion that that mark was not in 1856 the mark of the plaintiff's trade in respect to such shovels."

Few, if any, of the judges of this country have been more learned in the law of patents and trade-marks than Judge Blatchford, and there is none whose opinions on these subjects command more respect. The application of his decision to the facts of this case is obvious. There have been decisions of the Patent Office to the effect that the following articles were in the same class: Timothy Seed and Clover Seed, 122 O. G. 1398; Paste Paints and Ready Mixed Paints, 134 O. G. 1049; Bitters and Ground Roots for Making Bitters, 126 O. G. 2192; Cigars and Smoking and Chewing Tobacco, 144 O. G. 275; Saws, Tools, Files, Hammers and Hatchets, 141 O. G. 285; Gasoline, Vapor, Coal and Wood Stoves, 134 O. G. 2245. The courts have determined that a trade-mark for smoking and chewing tobacco is infringed by its use on cigarettes. Carroll v. Ertheiler (C. C.) 1 Fed. 688; American Tobacco Co. v. Polacsek (C. C.) 170 Fed. 117, 120. And in Church & Dwight Co. v. Russ (C. C.) 99 Fed. 276, 280, Judge Baker considered the very questions in hand and held that the use on another's baking powder of a manufacturer's trade-mark on baking soda was an infringement of the latter's right to the exclusive use thereof. This decision was rendered 10 years ago, it accords with our opinion, has been cited approvingly in later decisions (Enoch Morgan's Sons Co. v. Ward, 152 Fed. 690, 693, 81 C. C. A. 616, 619; Walter Baker & Co. v. Delapenha [C. C.] 160 Fed. 746, 751), and, even if the questions it answers were doubtful, it would be unwise to depart from it now. Uniformity and certainty in rules of property are often more important and desirable than technical correctness.

Has the complainant been guilty of such delay and acquiescence in the defendant's use of the picture of the cow that it may not appeal successfully to a court of equity for relief? Laches is of the nature of estoppel. Its application is conditioned, not by the lapse of time alone, but largely by such a change of defendant's position induced by a complainant's delay and acquiescence in a disregard of his rights as makes it inequitable to enforce them. It is without application or effect in a suit for infringement until the complainant has received knowledge or such notice as pursued with reasonable diligence would have led to knowledge of the infringement. Sawyer v. Kellogg (C. C.) 9 Fed. 601, 602; Pence v. Langdon, 99 U. S. 578, 581, 25 L. Ed. 420; Kilbourn v. Sunderland, 130 U. S. 505, 518, 9 Sup. Ct. 594, 32 L. Ed. 1005.

There is no evidence in this record that the complainant had any knowledge or notice of the use of the trade-mark here in issue by the defendant upon baking powder prior to the year 1898. In October of

that year the complainant wrote to the Layton Pure Food Company, a partnership, the predecessor in interest of the defendant, that its attention had been called to the fact that they were using the picture of a cow on their baking powder, that they were thereby infringing its rights, and it requested them to discontinue the use of this trademark. After several letters had passed between the parties, the Layton Company declined to discontinue the use of the mark on the ground that the complainant had never used it on baking powder. In 1900 the complainant wrote to the Layton Company that its claim that the use of the picture of the cow upon baking powder was an infringement of its trade-mark therein had been sustained by the decision of the United States Circuit Court and sent them a copy of the opinion in Church & Dwight Company v. Russ (C. C.) 99 Fed. 276, 280. The bill in this case was filed in June, 1907, more than eight years after notice to the complainant of the infringement and more than six years after it notified the Layton Company of the decision in its favor in the Russ Case. Meanwhile the defendant, the corporation, succeeded its predecessor, the partnership, in 1901. It advertised and sold its baking powder under the picture of the cow without farther notice or objection until 1907. The decree below is for an accounting and an injunction. As the decree for the accounting is for the recovery of money, it is governed by the general rule of laches that courts of equity act or refuse to act in analogy to the statute of limitations relating to actions at law of like character, that under ordinary circumstances a suit in equity will not be stayed before, and will be stayed after, the time fixed by the analogous statute of limitations, but that if unusual conditions or extraordinary circumstances make it inequitable to allow the prosecution of a suit after a briefer, or to forbid its maintenance after a longer, period than that fixed by the statute, the court will determine the extraordinary case in accordance with the equities which condition it. Kelley v. Boettcher, 85 Fed. 55, 62, 29 C. C. A. 14, 21; Ide v. Trorlicht, Duncker & Renard Carpet Co., 115 Fed. 137, 148, 53 C. C. A. 341, 352; Brun v. Mann, 151 Fed. 145, 154, 80 C. C. A. 513, 522, 12 L. R. A. (N. S.) 154. The analogous statute of limitations at law permits a suit within five years of the accrual of the cause of action. Rev. St. Mo. 1899, § 4273 (Ann. St. 1906, p. 2349).

The complainant's delay to commence suit for more than eight years after its knowledge of the infringement, the frank claim of the predecessor of the defendant in 1898, a claim not at that time clearly baseless, that they had the like right to use the picture of the cow on baking powder that the complainant had on baking soda, the continued use of the picture by that partnership after they received notice in 1900 of the Russ decision, the subsequent succession of the defendant corporation in 1901, the latter's continuous use of this picture and its sales of millions of packages of baking powder under it between that time and the filing of the bill in this suit in 1907, without farther objection or any attempt by the complainant to enforce its rights, constitute circumstances so extraordinary, show such an acquiescence by the complainant in the defendant's use of the trade-mark as was well calculated to lull it into security and render it inequitable to require

of the defendant now an accounting for its sales prior to the date of the filing of the bill. The decree will be modified accordingly so as to limit the accounting to the time subsequent to the filing of the bill when the defendant had full knowledge of the rights of the complainant and of its purpose to enforce them. When a court of equity finds that during the delay of one of the parties their position has so changed in reliance thereon that the equitable relief which that party seeks cannot be granted without doing injustice, it will not exert its powers to save him from the consequences of his own neglect. McLean v. Fleming, 96 U. S. 245, 257, 258, 24 L. Ed. 828; Menendez v. Holt, 128 U. S. 514, 523, 524, 9 Sup. Ct. 143, 32 L. Ed. 526; Edward & John Burke v. Bishop (C. C.) 175 Fed. 167, 175; Wolf Bros. & Co. v. Hamilton Brown Shoe Co., 91 C. C. A. 363, 368, 165 Fed. 413, 418; Manhattan Medicine Co. v. Wood, 16 Fed. Cas. 605, No. 9,026; Cahn v. Gottschalk (Com. Pl.) 2 N. Y. Supp. 13, 18; Low v. Fels, 35 Fed. 361, 362; N. K. Fairbanks Co. v. Luckel, King & Cake Soap Co., 116 Fed. 332, 54 C. C. A. 204; Worcester Brewing Corp. v. Rueter & Co., 157 Fed. 217, 84 C. C. A. 665.

The decree for the injunction stands on different ground. The complainant is the owner of a trade-mark for baking soda and baking powder consisting of this picture of a cow and this is valuable property. It is entitled to be protected in the exclusive use of this property. Every sale under this trade-mark of a package of baking powder manufactured by another is an infringement of the complainant's right and a trespass upon its property. While the delay of the complainant and its apparent acquiescence in past trespasses may make it inequitable to compel the defendant to account for the profit it derived from them, they confer upon it no right either at law or in equity to continue them. Neither the statute of limitations nor laches presents any defense to the prayer of the complainant for the prevention of future infringement. It is true that there are exceptional cases in which the owners of trade-marks have acquiesced in the use of them by the public or by competitors for such a length of time and under such circumstances that their action has been held to estop them from denying that they had abandoned their trade-marks and to constitute a bar to an application for an injunction against an infringement of them. French Republic v. Saratoga Vichy Spring Co., 191 U. S. 427, 437, 24 Sup. Ct. 145, 48 L. Ed. 247; Prince's Metallic Paint Co. v. Prince Mfg. Co., 57 Fed. 938, 943, 6 C. C. A. 647; Amoskeag Mfg. Co. v. Garner, 55 Barb. (N. Y.) 151. But the record in this case presents no facts which bring it within this class of cases. The complainant notified the predecessors of the defendant in 1898, and again in 1900, of its claim to this trade-mark for baking powder and requested them to cease its use. The defendant took its business and its rights with notice of and subject to that claim. There is no evidence that the complainant ever had the intention to abandon this claim except its delay for about nine years to commence its suit for the infringement, and that delay is insufficient to establish any intention to abandon it or to deprive it of its right to prevent farther infringement. Fullwood v. Fullwood, 9 Chan. Decisions, 176. Repeated trespasses or infringements establish no right to continue to trespass or to infringe,

and the defendant may not be permitted to continue to use the trademark of the complainant. McLean v. Fleming, 96 U. S. 245, 247, 258, 24 L. Ed. 828; Menendez v. Holt, 128 U. S. 514, 523, 524, 9 Sup. Ct. 143, 32 L. Ed. 526.

This case must be remanded to the court below, with directions to modify the decree so as to limit the accounting to the time subsequent to the filing of the bill, and with that modification the decree is affirmed.