## N. WOLF & SONS *v.* LORD & TAYLOR.

TRADEMARKS; SIMILARITY OF SUBJECTS; EVIDENCE.

The registration, for knitted and textile underwear, of a trademark which is identical with a registered mark in use by the opposer for hosiery, will be denied as tending to mislead or confuse the purchasing public; and damage to the opposer need not be shown, since such a conflict implies damage, both to the opposer and to the public.

No. 895.          Patent Appeal.          Submitted January 19, 1914.          Decided February 2, 1914.

HEARING on an appeal from a decision of the Commissioner of Patents sustaining an opposition to the registration of a trademark.          *Affirmed.*

The facts are stated in the opinion.

*Mr. John M. Coit* and *Mr. James M. Ramsey* for the appellants.

*Mr. Odin Roberts, Mr. William B. Goodwin, Mr. Charles D. Woodberry, Mr. Lauren Carroll, Messrs. Roberts, Roberts, & Cushman,* and *Messrs. Gould & Wilkie* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

This is a trademark opposition in which Lord & Taylor, appellee company, is opposing the registration, by H. Wolf & Sons, appellant company, of a trademark consisting of a rayed

medallion having the word "Onyx" prominently displayed thereon, the medallion being suspended by a link or clasp from an eagle's beak. The registration is sought for use on knitted and textile undershirts, drawers, and union suits.

The appellee's mark is identically the same as that sought to be registered by appellant. It appears that appellee registered the mark in 1887, when it was adopted and used as a trademark upon men's, women's, and children's stockings. In 1907 a second registration was secured by appellee, in which it was stated: "The class of merchandise to which the trademark is appropriated is Class 41, knitted, netted, and lace goods, and the particular description of goods comprised in said class upon which said trademark is used is hosiery."

It appears that appellee at one time used the mark upon black underwear. This use was begun in 1897, and continued for several years. Its use on underwear was discontinued, which, it is urged by appellant, constituted an abandonment of the mark for underwear. It is also contended by appellant that appellee's use must be limited to stockings, and therefore its use upon knitted underwear, drawers, and union suits deprives appellee of no rights. It is unnecessary to indulge in nice distinctions as to the exact meaning of the term "hosiery." If appellee had never applied the mark to underwear, appellant's position would not be improved. The classes of goods are so similar as to bring appellant's right to registration within the inhibition of the trademark act. Much evidence was adduced by appellee to show that appellant's use of the mark on underwear would be likely to create confusion in trade. It also appears that stockings and underwear are generally handled by the same dealers, and retailed together over the same counter, under one general classification of hosiery and underwear. It is a recognized rule that different species of goods are of the same class when a certain trademark used on them would enable an unscrupulous dealer to readily palm off on an unsuspecting purchaser the goods of one make when he supposed he was receiving the goods of another. *Church & D. Co.* v. *Russ,* 99 Fed. 276.

The issue here is the old one so often decided by this court, . Would appellant's use of the mark on underwear lead the ordinary purchaser to believe that he was buying the goods of appellee? We think the word "class," as used in the statute, means broadly a genus including as species any goods upon which the use of the same mark, when the goods are exposed side by side, would tend to mislead the purchasing public. We have no difficulty in applying this rule to knitted and textile undershirts, drawers, and union suits on the one hand, and men's, women's, and children's stockings on the other.

But it is urged by counsel for appellant that it has not been shown that appellee would be damaged. The conflict implies damage not only to the party whose right to the mark is invaded, but to the public; and it is the duty of the Commissioner of Patents, in passing upon the registration of a trademark, to guard jealously the rights of the public. In this view of the case, it is unnecessary to consider the question of appellee's alleged abandonment of the use of the mark on underwear, since the ruling would be the same if appellee had never so used the mark.

The decision of the Commissioner of Patents is affirmed, and the clerk is directed to certify these proceedings as by law required. *Affirmed.*

A motion by the appellant for a rehearing was overruled March 2, 1914.