WEYMAN v. SODERBERG et al.

(Circuit Court, W. D. Wisconsin.  April 23, 1901.)

No. 171.

TRADE-NAME—COPENHAGEN SNUFF — INFRINGEMENT — UNFAIR COMPETITION — INJUNCTION.

Complainant, a Pittsburg manufacturer of snuff, used the name "Copenhagen," adopted by his predecessor as a trade-mark, in labeling the jars in which it was sold, and advertised it in the usual forms of the name as used in various languages.  It was not intended thereby to denote that it was imported, but was adopted to secure Scandinavian customers.  Defendants, retail dealers in snuff, bought for the purpose of sale, from a Chicago manufacturer, several jars labeled "Kjobenhavn Snus," to indicate that it was imported, so as to likewise secure Scandinavian trade.  Otherwise the jars and labels, and the smell, taste, appearance, and quality of the article, did not resemble those of complainant.  They sold it without intending to deceive, and there was no evidence that any one was misled.  *Held*, that no right to a geographical name as a trademark proper could be acquired, but that, conceding that complainant had acquired such a right to use the word "Copenhagen," there was no infringement thereof, and no intent to unfairly compete with him, and his bill for injunction should be dismissed.[1]

In Equity.

P. H. Gunckel, for complainant.

Higbee & Bunge and G. M. Woodward, for defendants.

[1] Unfair competition in trade, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.

BUNN, District Judge.    This is a suit in equity to establish a trademark and for a perpetual injunction enjoining the defendants against its use.    The complainant is a citizen of Pittsburg, Pa., and a manufacturer of tobacco and snuff in that city.    He and his predecessors have been in that business, as is alleged, since 1827.    The defendants are citizens of La Crosse, in the state of Wisconsin, and engaged, in a small way, in the business of grocers.    From 1827 to 1865 the complainant's business was carried on by George Weyman, the father of the complainant; afterwards by the complainant and his brother, William P. Weyman, as Weyman & Bro., until about 1877; and since then by the complainant.    About the year 1835 the complainant's predecessor adopted the name "Copenhagen" in connection with the sale of the snuff, calling and advertising it as Copenhagen snuff in the English, Norwegian, German, and Swedish languages, claiming the name "Copenhagen" as a trade-mark.    The complainant claims that this word was chosen, not as the place of the manufacture, or to denote that the snuff was imported, but as a merely arbitrary and fanciful designation.    At the same time they did not confine themselves to the English form of the word, but on their labels they advertised it in all the usual forms of the name as used in the English, Danish, Swedish, Norwegian, and German languages.    In English it was "Weyman's Copenhagen Snuff," in Swedish it was "Weyman's Köpenhamn Snus," in German it was "Weyman's Copenhagen Schnupftabak," in Norwegian and Danish it was "Weyman's Kjöbenhavns Snuss."    All these different forms were used upon their labels and advertising sheets.    As appears from the testimony, these words are not only spelled differently, but are differently pronounced in these different languages, but in none has it any meaning, so far as appears, except as being the name of a city in Denmark.    The defendants, about 1897, purchased from the Swedish Snuff Agency in Chicago in all three five-pound jars of a snuff manufactured in Chicago with a label upon the jars containing the words "Akta Kjobenhavn Snus," and also containing the words, "The Swedish Snuff Agency, Sole Agents of U. S.    Main Office, 768 to 772 Sedgwick St., Chicago, Ill."    Without any intention of deceiving anybody, and without in fact deceiving anybody, they sold these 15 pounds of snuff.    When notified by complainant that he had the exclusive right to use the name "Copenhagen" on his snuff, defendants ceased selling, and have not bought or sold any since.    This is the head and front of their offending.    They were selling the complainant's snuff and two or three other kinds at the same time, side by side, but did not try to sell one kind for another, but sold to every customer just what he called for, and sold several times more of the complainant's snuff than that of any other and all other kinds together.    The question is whether the complainant could have or has acquired the exclusive right to the word "Copenhagen" as applied to the sale of snuff, and, if so, whether that right applies to all forms of the word in the different languages of Northern Europe.    Another question is, aside from the one of an exclusive proprietary right to the use of a geographical name as a trademark, whether the defendants have been guilty of unfair competition in trade in dressing out their goods in such a manner as to put them

off upon the public as the goods of the complainant. There is no evidence that they have done this in fact, or had any intention of doing it. But, from the manner in which the defendants' snuff was labeled and dressed out, would there be any likelihood or probability that a person of ordinary sense and prudence purchasing could be deceived? In McLean v. Fleming, 96 U. S. 251, 24 L. Ed. 831, the supreme court lays down the rule as follows:

"What degree of resemblance is necessary to constitute an infringement is incapable of exact definition as applicable to all cases. All that courts of justice can do in that regard is to say that no trader can adopt a trade-mark so resembling that of another trader as that ordinary purchasers, buying with ordinary caution, are likely to be misled."

See, also, Brown v. Seidel, 153 Pa. 72, 25 Atl. 1064.

Within this rule, the labels are the best evidence, and no one looking at these could mistake the one snuff for the other. The language of Mr. Justice Field in Tobacco Co. v. Finzer, 128 U. S. 182, 9 Sup. Ct. 60, 32 L. Ed. 395, is quite applicable to the case at bar:

"The judgment of the eye upon the two is more satisfactory than evidence from any other source as to the possibility of parties being misled so as to take one tobacco for the other; and this judgment is against any such possibility. Seeing, in such case, is believing; existing differences being at once perceived, and remaining on the mind of the observer. There is no evidence that any one was ever misled by the alleged resemblance between the two designs."

Upon a careful study of the testimony, and especially of the different jars, with their labels, produced as exhibits on the final hearing, in which the complainant's and defendants' snuffs were kept and sold from, I am satisfied that there has been no infringement, and no unfair competition. There is not a single thing about the jars or labels used by the defendants that is at all suggestive of those of the complainant, except the words "Kjobenhavn Snus," unless it be the fact that these jars are both of earthenware manufacture. The complainant has used this form of the name "Copenhagen" in advertising to his Danish and Norwegian customers. But the labels in every other way are totally unlike; so much so that it would seem that no person of common sense and intelligence could be deceived into buying one kind of snuff for the other. Both jars are round earthen jars holding about a gallon, but of different shapes; the plaintiff's jars being nine inches high, and the defendants' an inch lower, but about one inch broader. The color of complainant's jar is a pale green; that of defendants a dark brown. The cover of the plaintiff's jar is tin; that of defendants is earthen. And when we come to the labels the difference is still more marked. The plaintiff's label is about six inches high and seven inches wide, and circular, or somewhat eliptical, in form. The defendants' approximates the same height and breadth, but is in diamond shape, with four sharp corners. The coloring of the complainant's letters is white upon a background of red. The color of the defendants' lettering is black upon a plain background of white paper. The complainant's label is considerably embellished and ornamented with three borders of different stripes and colors, with a diamond-shaped center piece in black and gold, with a "W" in different colors of blue and gold and white, fantastically in-

108 F.—5

terwoven with a horseshoe of black and red and white color. The defendants' is all plain black and white, with little attempt at ornamentation, except that the words "Kjöbenhavn Rappe" are printed over a long leaf or spray of something in black. The defendants, as already seen, represent the snuff as being imported and sold by "The Swedish Snuff Agency, Sole Agents of the U. S.," while the complainant's label represents the snuff as manufactured by "Weyman & Bro., Tobacco and Snuff Manufacturers, Pittsburg, Pa." Upon inspection it is quite difficult to see how the defendants' snuff could be mistaken for that of the complainant. The complainant's own witnesses testify, in substance, that the one snuff could not be mistaken for the other unless the jars were placed so the labels could not be seen. If the jars were turned around, so as to present the back side, and hide the label, then one might be sold or taken for the other. But it is evident that in that case, with the labels hidden from view, there is no such resemblance in color or shape as to mislead. This does not savor much of deceit; and when we come to the snuffs themselves the evidence shows they are quite unlike in smell, taste, appearance, and quality, the defendants' being of a much cheaper and coarser grade; and that the difference in those respects is quite as great as the difference in the design and finish of the labels which dress them out. In fact, there does not seem to have been any design on the part of the manufacturers or dealers in Chicago of the snuff sold by defendants, of which complaint is made, to imitate the complainant's label, or to put off their snuff upon the public as and for that manufactured by the complainant. On the contrary, judging from the labels used upon the jars, it would seem to have been their design to catch the Swedish, Norwegian, and Danish trade by representing their snuff to be imported from Sweden. The evidence shows that a great part of the trade in snuff is with these peoples, and it is quite natural to suppose that a snuff made in their own country would be desirable. The complainants have built up a large trade with the people of these nationalities in this country, and no doubt the prominent words "Copenhagen Snuff," which is the marked and prominent part of their label, and the one which catches the eye, were intended and have had the effect to attract and stimulate the trade in snuff with the people of these countries coming from these Northern nations of Europe; although on the same label, in smaller letters, in circular form, reading up on one side and down on the other, and so not easily seen or read, are the words, "Weyman & Bro., Tobacco and Snuff Manufacturers, Pittsburg, Pa." Both complainant and the dealers in Chicago were no doubt advertising to attract this trade, but I cannot see that there has been any unfairness in dealing as between the complainant and defendants, who bought and sold the snuff without any idea of invading the plaintiff's rights. The complainant does not ask for any accounting, or for damages, except those that are nominal. He wants a decree establishing his trade-mark, with one cent damages and costs of suit. On the preliminary hearing the defendants stated that they had no intention of buying or selling any more of the snuff, and offered to the complainant that he might take a decree for a perpetual injunction if he would take it without costs, which complainant de-

clined to do. I think the complainant should have accepted this offer, and not proceeded to take testimony, and make a bill of costs. It was, indeed, more than the court is now inclined to give to the complainant upon consideration of the testimony. Since the decision of the supreme court in Mill Co. v. Alcorn, 150 U. S. 460, 14 Sup. Ct. 151, 37 L. Ed. 1144, it has been considered as settled doctrine that a person cannot acquire a right to the exclusive use of a geographical or proper name as a trade-mark proper. But, even if we assume that the complainant acquired such a right to the use of the word "Copenhagen," it seems quite clear from the testimony, as we have seen, that there has been no infringement, and no intent to put off the defendants' snuff as and for that of the complainant. A person of some learning in modern languages would know that "Kjöbenhavn" and "Copenhagen" were each intended to designate a city known to the world as the capital of Denmark, but, taking the jars and labels together, no one of the least degree of intelligence would be deceived into buying one snuff for the other. The plaintiff's bill will be dismissed, with costs.