June 6th, 1913.

## THE PEOPLE v. JOHN POPPER.

(1.) TRADE-MARKS, IMITATIONS OF—PENAL CODE, SEC. 2354—DEMURRER.
Where an information charges in substance that the defendant did unlawfully sell, etc., merchandise contained in a package which bore a label alleged to be used by defendant, which label is stated to be in imitation of complainant's label, and fac-similes of both labels are incorporated in the complaint, *held* that the language of the section of the Penal Code being unmistakably plain and direct, a demurrer to the information on the ground that it does not fall within the purview of the Statute will be over-ruled.

(2.) SAME.
Where it appears from an information charging imitation of trade-mark, that defendant uses a label of marked similarity to that of complainant, the only real difference being that in one the word " Eichenkranz " is used, while in the other the word " Leiderkranz " appears, *held* that a demurrer thereto on the ground that the facts therein set forth do not constitute a crime, will be over-ruled.
MCINERNEY, J., dissents.

P R E S E N T :

Hons. MOSES HERRMAN, JAMES J. MCINERNEY and JOSEPH M. DEUEL.

A P P E A R A N C E S :

Hon. *Charles S. Whitman*, District attorney, (*George Gordon Battle* on the brief) for the People.

Messrs. *Duell, Warfield & Duell*, for the Defendant.

DEUEL, J.:

THE information charges a trade-mark offense in two counts under subdivisions 2 and 3 of section 2354 of the Penal Law, which subdivisions, or so much thereof as pertain to this prosecution, read as follows:

" A person who:

2.   Affixes to an article of merchandise * * * an imitation of the trade-mark of another, without the latter's consent; or

3.   Knowingly sells, or keeps or offers for sale, an article of merchandise to which is affixed * * * an imitation of the trade-mark of another without the latter's consent * * * is guilty of a misdemeanor."

The crime is charged to have been committed on the eighteenth day of October, 1911, " and for a considerable time prior thereto." The jurisdictional facts are set forth, the ownership of the trade-mark is alleged and a facsimile of the label and trade-mark of the complaining corporation is inserted in the information.

The first count charges that the " defendant unlawfully and knowingly did sell, keep and offer for sale * * * a certain article of merchandise, to wit, a quantity of cheese, then and there contained in a certain package, to which was then and there affixed a label and trade-mark in words and figures as follows," inserting a facsimile of defendant's label and trade-mark.

The second count charges that the " defendant unlawfully did affix " the alleged imitation set forth in the first count, and all without the consent of the complaining corporation.

The defendant demurs on the following grounds:

First:  That the facts set forth in said information do not fall within the purview of the statute in such case made and provided.

Second:  That the facts set forth in the information do not constitute a crime.

Third: That it appears on the face of the information that neither the trade-mark nor label of defendant is an imitation or counterfeit of the trade-mark or label of the Monroe Cheese Company.

The genuineness of the respective labels and trade-marks (referred to hereinafter as exhibits A and B) set forth in the information as a part of the statement of facts necessary to constitute a crime is conceded by the demurrer, and they are therefore before us precisely as they would be if introduced at trial, and for a similar determination: Is Exhibit B a sufficient trade-mark imitation of exhibit A to put the defendant on trial? This question is raised by the second and third grounds of the demurrer.

The first ground—the information does not fall within the purview of the statute—may be disallowed without discussion because of the unmistakably plain and direct language of section 2354. Nor have we any legitimate occasion to criticise the complainant for selecting a criminal rather than a civil remedy, however much we may differ on the ground of expediency. The law gives both remedies and the selection of one is not preclusive of the other. The complainant selected the remedy most difficult to maintain for, in addition to proving actual trespass on legal trade-mark rights, he must show that the trespass was intentional, or prove facts from which actual knowledge logically may be inferred. It may be contended, however, that under the second count based on subdivision 2 there is no such requirement, and the frame of the count indicates that the pleader so believed. Taking the whole of section 2354 into consideration, it is by no means certain the legislature intended that a criminal conviction and the infliction of criminal penalties should follow an accidental or unintentional affixation to merchandise of an imitation of another's trade-mark. But we need not discuss that question at this time.

Further to emphasize the difference between the two remedies, civil and criminal, it would not be difficult to state a supositious trade-mark case wherein upon identically the same facts the judgments of these two tribunals would be diametrically opposite. The civil tribunal finding actual infringement disregards intent, or the bona fides, and gives judgment to the complainant; the criminal tribunal finding actual infringement must give judgment to the defendant unless the infringement be intentional and proven to be such beyond a reasonable doubt. Between an infringement and an imitation of a trademark there is no substantial difference.

By data furnished in defendant's brief we are informed that complainant has been using its label and trade-mark, exhibit A, since January 1st, 1902, and in November, 1900, procured the registration of the name "Liederkranz" as a trade-mark in the U. S. Patent Office; that the defendant has been using his label and trade-mark, exhibit B, since October, 1905, and on June 6, 1911, likewise registered the name "Eichenkranz" as a trade-mark.

In and of themselves neither of these two names is in conflict with the other. Without accessories they are sufficiently distinctive to avoid clashing as valid trade-mark. Reaching that conclusion we are able to dispose of a considerable portion of defendant's argument. But the question before us cannot be reduced to such a narrow limit; it extends to the entire label, and as thus extended necessarily includes the use that the defendant has made of the name "Eichenkranz" in putting packages of cheese on the market in competition with complainant. It is the *tout ensemble* of label, package and product that must be considered.

Using information likewise derived, we are able to determine that in January, 1902, the complaining company started out with, what it intended to be, a distinctive label in order to indicate that it produced the cheese within each package to

which the said label was attached. By registering the single word "Liederkranz," the name of the cheese, as a trade-mark, the company lost none of the rights acquired by the use of the entire label during seven years preceding such registration. (38 Cyc. 863.)

It is that label in its entirety, form, color, arrangement, printing, adaptability and general make-up, with which we must compare defendant's label in order to determine whether the latter " by the use of words or letters, similar in appearance or in sound, or by any sign, device or other means whatsoever " is likely to induce the belief that a package of cheese which it enwraps is the product of the complaining company; the package, in size and form, being substantially identical with that sent out by said company. (Penal Law, § 2353.)

In drawing conclusions from such a comparison, we are not to decide adversely to the defendant because of a possibility of some one being misled; nor are we to decide adversely to the complainant because from our view point deception is improbable. It is not a question for experts, nor for one who places the respective labels side by side and then deliberately proceeds to chart the individual features of each, although the latter may be useful in applying the rule which the Courts of this country and of England have long followed; the probable effect upon the mind of ordinarily prudent and trustful buyers in the markets making their purchases in the general way to which they are accustomed. If there be a predominance of similarities to the point of probable deception of purchasers possessing ordinary intelligence and judgment, or as some authorities state it "incautious, unwary or ignorant purchasers," then the trade-mark and label exhibit B must be regarded as a colorable or deceptive imitation of exhibit A.

In Colman v. Crump (70 N. Y. 573) it was held that " if the resemblance is such as to deceive a purchaser of ordinary caution, or if it is calculated to deceive the careless and un-

wary, and thus to injure the sale of the goods of the proprietor of the trade-mark, it is a violation of his property rights therein."

In Fischer v. Blank (138 N. Y. 245) Judge Maynard said: " The true test we think, is whether the resemblance is such that it is calculated to deceive, and does in fact deceive, the ordinary buyer making his purchases under the ordinary conditions which prevail in the conduct of the particular traffic to which the controversy relates." And then he adds: " No inflexible rule can be laid down. Each case must in a measure be a law unto itself."

In McLean v. Fleming (96 U. S. 245) Justice Clifford said: " What degree of resemblance is necessary to constitute an infringement is incapable of exact definition, as applicable to all cases. All that Courts of Justice can do, in that regard, is to say that no trader can adopt a trade-mark, so resembling that of another trader, as that ordinary purchasers, buying with ordinary caution, are likely to be misled."

An inspection of complainant's label shows it to be a strip of glazed white paper one and three quarters inches wide and about eleven inches long upon which a definite plan is impressed in gilt. It consists of two rectangular fields each 3¼ by 1⅜ inches running lengthwise and two very much smaller rectangular fields running crosswise so adjusted that when the label is attached to a rectangular block of cheese the two larger fields appear on opposite sides and the two smaller fields on opposite ends of the package. The name of the cheese, " Liederkranz," appears in the field intended for the top of the package, with some other words not specially useful as identifying features, all in gilt; the large fields on the reverse side contains information to purchasers likewise printed; and words are similarly printed in each of the smaller fields. The name " Liederkranz," in letters somewhat ornamented, is printed on a slight curve.

In paper, gilt ink, length and width of strip, rectangular fields and dimensions, and general plan, defendant's label, exhibit B, is a servile copy, save that the large top or face field is marked off by a zig-zag line instead of double ruled lines, and in it " Eichenkranz " appears in plain letters somewhat larger than those used by complainant, and is underscored by double ruled lines. The other difference would pass unnoticed, save by a critical inspection, certainly by a buyer of ordinary observation, intelligence and judgment.

Having copied complainant's label to the extent already noted, the defendant selected as a name for his cheese a German word containing identically the same number of letters as complainant's, and like the latter, the last five letters being K R A N Z. To a German scholar the two words, in pronunciation and significance, are sufficiently different to prevent confusion, but there is no foundation for a presumption that either party is catering exclusively to such scholars. The natural inference is that each is catering to English speaking citizens and residents of this and neighboring states, a large percentage of whom are deficient in German.

Under all the circumstances stated it would seem reasonably probable that some portion of such consumers, either in buying for themselves or recommending others to buy, might be unable to describe complainant's product other than as " Kranz Cheese put up in small flat packages wrapped in a white label printed in gold." Such a mental picture in my estimation would fix itself on the mind of many such persons as a simple means of identifying what they want for themselves, purchasing, as many such persons do, in a careless and trustful manner and especially whether they be illiterate or not, or if making a purchase in a place where the light is not good. How many, or how few, might be thus misled we cannot determine as a question of law; we can only approximate the truth by the ordinary

methods of trial, the examination and cross examination of witnesses under oath.

Neither of the specific resemblances already pointed out—the size, shape and form of the marketable product; the color, width and length of the label; the combination of rectangular fields lengthwise and crosswise; the character of the paper and the ink used in printing,—would of itself suffice to sustain this prosecution, but they may be so combined as to furnish a novel and absolute means of distinguishing the product of one producer from the product of all competitors. Whenever such a combination reaches that degree of distinctiveness, the owner thereof is entitled to such protection as our statutes afford, whether they be civil or criminal, and the general public is entitled to be safeguarded against fraud and deception.

The case of Fischer v. Blank, *supra*, presented a very similar proposition as to which Judge Maynard said:

" Each one of these distinguishing features might be separately used and no harm result. But when all, or a number of them, are combined in a single package, and so arranged and exhibited, that, when they strike the eye of the intending purchaser, possessed of ordinary intelligence and judgment, the false impression is likely to be produced that the goods of the plaintiff are offered, it is the province of equity to interfere for the protection of the purchasing public as well as the plaintiff, and for the suppression of unfair and dishonest competition.

We are not called upon under the circumstances to go into any discussion in order to determine whether the scope of the section of the Penal Law upon which this prosecution is founded includes unfair and dishonest competition, because of the advantage that has been taken of " Liederkranz " which complainant registered as a trade-mark. " Eichenkranz " which was selected as a substitute, with all the other copied features,

is sufficiently " similar in appearance or in sound " to bring the case within the definition of an imitation.   (P. L. 2353.)

Actual instances of deception occurring in trade and commerce under normal conditions constitute the strongest possible proof of the deceptive character of an imitation, and we should not lose sight of the fact that this case was pending several months before a highly accomplished and painstaking City Magistrate, during which time several witnesses were sworn and examined, and he has found probable cause to believe the defendant guilty.   We have not been permitted to inspect the testimony then taken, but we are informed by the brief for the People, and it is not denied, that in the course of said examination " grocers from Boston testified that they actually placed Eichenkranz Cheese in stock as Liederkranz Cheese and sold it to the public as Liederkranz Cheese without knowing, that it was not Liederkranz Cheese."

I am in favor of disallowing the demurrer.


*Hermann, J.,* concurs.
*McInerney, J.,* dissents.


## NOTE ON CRIMES RESPECTING TRADE-MARKS.

### Generally.

To constitute the offense of using a counterfeit trade-mark the alleged trade-mark must be capable of appropriation as such and must be the exclusive property of the owner and not abandoned by him; the use must be with intent to defraud; and to establish this intent it must appear that the accused knew of the owner's rights.   People v. Molins, 7 N. Y. Cr. 51.

The law prohibits the sale of goods protected by a lawful trade-mark, which are represented to be the manufacture of another, unless they are contained in the original package and under the label placed thereon by the manufacturer.   It prohibits the sale of goods represented to have been made by the owner of the trade-mark; except as contained in the original package and as put up by him under his label; The protection